1  Justin S. Beck
2  3501 Roselle St.,
   Oceanside, CA 92056
3  760-449-2509
   justintimesd@gmail.com
4  *In Propria Persona*

```
FILED

May 15 2023

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ melindajwilliams      DEPUTY
```

5
6  ## IN THE UNITED STATES DISTRICT COURT
   ## FOR THE
7  ## SOUTHERN DISTRICT OF CALIFORNIA

8  ─────────────────────────────
9  JUSTIN S. BECK,                          )  Case No.: '23CV0882 JES  NLS
                                            )
10            Plaintiff,                    )  Judge: _____
                                            )
11      vs.                                 )  **COMPLAINT FOR DECLARATORY**
                                            )  **RELIEF, INJUNCTIVE RELIEF, AND**
12  SUPERIOR COURT OF CALIFORNIA,           )  **DAMAGES**
    COUNTY OF ORANGE                        )
13                                          )  1. DENIAL OF ACCESS UNDER
                                            )  AMERICANS WITH DISABILITIES ACT,
14            Defendant,                    )  TITLE II
                                            )
15                                          )
                                            )  2. FAILURE TO ACCOMMODATE UNDER
16  ─────────────────────────────          )  AMERICANS WITH DISABILITIES ACT,
                                               TITLE II
17
                                               3. UNRUH CIVIL RIGHTS ACT
18                                             VIOLATIONS
19
                                               4. EQUITABLE INDEMNIFICATION
20
21
22
23
24
25
26
27
28

                                    1

COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES

Plaintiff JUSTIN S. BECK ("Plaintiff") for his complaint against SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE ("Defendant") alleges as follows:

1. Plaintiff is a qualified, disabled individual under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (the "ADA") in that he has mental impairments that substantially limit one or more major life activities. A former CEO, Plaintiff is indigent due to the conduct at issue.

2. Title II of the ADA prohibits discrimination on the basis of disability by "public entities," which results in the denial of access to programs, services and activities operated by state and local governments. 42 U.S.C. §§ 12131(1), 12132. Defendant is a public entity subject to the ADA.

3. Title II of the ADA imposes federal mandates on the day-to-day operations of Defendant.

4. Title II of the ADA requires that all programs, services, and activities of Defendant are accessible to the qualified, disabled individual Plaintiff who is presently being exploited by Defendant.

5. As a qualified individual with a disability, Plaintiff was and is being excluded from participation in Defendant services, programs, or activities with malice and knowledge of his harm.

6. As a qualified individual with a disability, Plaintiff was and is being denied the benefits of Defendant services programs, or activities with malice and knowledge of his harm.

7. Defendant's willful exclusion of Plaintiff, denial of benefits to Plaintiff with knowledge of his disability, and discrimination against Plaintiff was and is by reason of Plaintiff's disability.

8. Plaintiff satisfied the claim presentation requirements of Government Claims Act under California law, has vested right to sue Defendant for damages, and Plaintiff brings this action within 6-months of claim denial. Clearly, Plaintiff cannot try this case before Defendant.

9. Plaintiff has further exhausted all purported administrative remedies available under state law and faces an acute and immediate threat of further irreparable harm and further damages as direct and proximate cause of Defendant's violations of Title II of the ADA against Plaintiff.

10. Plaintiff seeks declaratory relief that he is a qualified individual under Title II of the ADA.

11. Plaintiff seeks to permanently enjoin Defendant violations of Title II of the ADA against him.

12. Plaintiff seeks compensatory damages for willful violations and malice under Title II of the ADA and actual damages plus treble damages under state law under Unruh Civil Rights Act.

JURISDICTION

13. This court has original jurisdiction under 28 U.S.C. § 1331 where Title II of Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101, *et seq.* is mandatory law of the United States.

14. This court has supplemental jurisdiction under 28 U.S.C. § 1367 because the state claims under Unruh Civil Rights Act are so related to claims in the action having original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

15. Venue is proper in this court under 28 U.S.C. § 1391(b)(1) because Plaintiff resides in this judicial district. Plaintiff also has pending RICO and antitrust claims pending in this court.

PARTY IDENTIFICATION

16. Plaintiff JUSTIN S. BECK ("Beck" or "Plaintiff") is an individual who has a disability under 42 U.S.C. § 12102(1) whose place of residence is 3501 Roselle St., Oceanside, CA 92056. Plaintiff presented claims for money damages to Defendant which were denied on or around December 22, 2022, vesting his right to sue. This case arises from similar facts and circumstances.

17. Defendant SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE ("OCSC" or "Defendant") is a public entity whose public facilities under ADA Title II and Unruh are 751 W. Santa Ana Blvd., Santa Ana, CA 92701 and 700 W Civic Center Dr., Santa Ana, CA 92701.

FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

1. On March 10, 2023, The State Bar of California publicly confessed it was infected with bribery and corruption. On information and belief, Mr. Catanzarite is allegedly among its worst actors.

2. Before September 14, 2018, when fraudulent schemes targeted Plaintiff through Defendant, dating back to at least 2005, Catanzarite Law Corporation led by attorney Kenneth J. Catanzarite has engaged in a pattern of practice of filing knowingly fraudulent claims, deliberate concealment of material facts, deliberate misstatements to judicial officers, willful obstruction of justice, misappropriation of client assets with intent to defraud, malicious and vexatious litigation, and un-waivable conflicts of interest barred by mandatory law and ethical tenets.

3. On March 17, 2005, Catanzarite Law Corporation placed a lien for $120,000 on its own client's home with alleged intent to steal it. On December 1, 2017, Kenneth J. Catanzarite transferred the ~$1.3 million home to a "Robert J. Valusek | Charla L. Valusek" for a value of $99,500.

3

4. In 2007 according to public records produced to Plaintiff by The State Bar of California on June 14, 2022, "Catanzarite did not tell the Court that his client, who was declaring bankruptcy, deeded his home to Catanzarite. In bankruptcy, the person declaring bankruptcy cannot sell or give away without telling the Court. **Catanzarite took the property to pay for his fees, but did not tell the [bankruptcy] Court,** violating this strict rule." This was allegedly willful bankruptcy fraud by Mr. Catanzarite, and part of a pattern also carried on through Defendant.

5. In 2011 according to public records produced to Plaintiff by The State Bar of California on June 14, 2022, "Catanzarite violated court rules by making statements to the court without any proof. The court said: "But here plaintiffs [Catanzarite] admit they violated several rules. They also continued to cite the excluded evidence in their reply brief even after the defendants noted the error with their briefs." The Court pointed out that Catanzarite's brief made 39 unsupported factual statements, and paragraphs lacking references. Some statements were completely incorrect. **Catanzarite does not care about the truth in making statements to the Court**."

6. In 2013 according to public records produced to Plaintiff by The State Bar of California on June 14, 2022, "the Court punished Catanzarite for saying one thing, then switching his story. The court stated that **Catanzarite's case was a "sham."** First, Catanzarite claimed that the dental practice run by Dr. Noroski and Dr. Schneider should give back money to patients who had been treated at the dental office, but did not say anything was wrong with the dentistry. Then, Catanzarite realized he had no case, because the plaintiffs who were former patients had their depositions and said they were happy with Dr. Noroski and happy with Dr. Schneider...The plaintiffs dropped out and Catanzarite had no case. Catanzarite asked to file an amended complaint that now said the dental services were bad. **The Court punished Catanzarite...for wasting everybody's time.**"

7. An elderly Richard Carlson testified on February 12, 2020, that he was **visited *at his home* by Kenneth J. Catanzarite when he was not seeking an attorney and did not believe he suffered damages.** Mr. Catanzarite filed <u>nine putative class actions</u> on Mr. Carlson's behalf anyway for hundreds of millions of dollars in damages, some of which were filed in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE with alleged intent to defraud.

4

8. Between 1988 and 2011, on information and belief, Plaintiff alleges the records and captions of at least 25 cases filed against Kenneth J. Catanzarite, his family, or Catanzarite Law Corporation, were "fixed" and manipulated in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE by court staff to conceal and obstruct them in exchange of alleged bribes.

9. On September 22, 2017, a clerk within SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE was sentenced for "fixing" over 1,000 cases violative of RICO, 18 U.S.C. § 1962(d).

10. On October 13, 2022, the United States Department of Justice announced: "Civil Rights Violations by Orange County, California, District Attorney's Office and Sheriff's Department." The indigent, disabled Plaintiff sought help from Orange County District Attorney's Office ("OCDA") and even filed a police report with Anaheim Police Department ("APD"), but each overtly chose to protect local business Catanzarite Law Corporation, Mr. Catanzarite, and his alleged gang of unscrupulous marauders. Neither OCDA nor APD would even speak to Plaintiff.

11. For the matter of Richard Carlson who did not believe he had suffered damages, was not seeking an attorney when visited at his home by Kenneth J. Catanzarite, a series of Court orders issued in U.S. District Court, U.S. Bankruptcy Court and later in 11th Circuit Court of Appeals.

12. On May 8, 2020, a court order signed by Honorable Judge Scott M. Grossman issued pertaining to "discovery requests served by Mr. Catanzarite in violation of Federal Rule of Civil Procedure 26(g)(1)(B)" which resulted in sanctions. This fraudulent scheme commenced with the elderly "client" Richard Carlson, who was not seeking counsel, and did not believe he had suffered damages when visited at his home by Mr. Catanzarite.

13. An "Order Affirming Order of Bankruptcy Court" on appeal upheld sanctions for "violation of a preliminary injunction." This commenced with the elderly Richard Carlson, who was not seeking counsel, and did not believe he had suffered damages when visited at his home by Mr. Catanzarite.

14. An "Order Liquidating and Awarding Compensatory Sanctions" ordered Mr. Catanzarite must pay "$49,020.50" and "11,639.25" for sanctionable conduct related to Mr. Carlson's "cases." This commenced with the elderly Richard Carlson, who was not seeking counsel, and did not believe he had suffered damages when visited at his home by Mr. Catanzarite.

15. An "Order for Preliminary Injunction and Imposing Sanctions" found that Catanzarite violated a court-ordered preliminary injunction related to the elderly Mr. Carlson by "filing the Henkin-Looper Case and the associated *lis pendens* [in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE]" and "[a]ny further violations of this Court's Orders, the Bankruptcy Code, Bankruptcy Rules, or the Local Rules will result in an order requiring Mr. Catanzarite to show cause why his pro hac vice status should not be revoked."

16. After Mr. Catanzarite disregarded that order, too, an "Order to Show Cause Why Attorney Kenneth Catanzarite's Pro Hac Vice Status Should Not Be Revoked" found Mr. Catanzarite filed a "false affidavit" to certify his pro hac vice status, and that he was in fact suspended from the practice of law in New York, that he "refuses to be governed by" the rules of the court and professional conduct in that jurisdiction, that a website he published "contained misleading information" and "otherwise sought to undermine the bankruptcy process," that Mr. Catanzarite engaged in "numerous discovery violations" resulting in "sanctions," that Mr. Catanzarite engaged in "unilaterally noticing depositions at an inconsiderate time and inconvenient time and place," "violation of preliminary injunction," and that Mr. Catanzarite filed a "false emergency" that was "completely meritless."

17. On June 16, 2020, according to public records produced by The State Bar of California, Mr. Catanzarite informed Office of Chief Trial Counsel that he had been repeatedly sanctioned, but Mr. Catanzarite failed to disclose that his "client" Mr. Carlson on whose behalf 9 putative class actions were filed did not believe he had suffered damages and was not seeking an attorney. Nevertheless, Mr. Catanzarite said he would appeal all sanctions; all were upheld. *Catanzarite v. GCL, LLC (In re Daymark Realty Advisors, Inc.)*, No. 21-12766 (11th Cir. Mar. 9, 2022)

18. On June 11, 2021, an order to expunge notice of pendency of action (*lis pendens*) was ordered removed in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE which was found to have violated a federal court order, and $13,600 in costs were imputed to Catanzarite or his client. Again, this commenced with the elderly Richard Carlson, who was not seeking counsel, and did not believe he had suffered damages when visited at his home by Mr. Catanzarite.

19. On information and belief, Catanzarite bribes OCDA, APD, and The State Bar of California.

## CATANZARITE'S FRAUDULENT SCHEMES TARGET PLAINTIFF VIA DEFENDANT

20. Consistent with his patterns of practice, commencing September 14, 2018, Kenneth J. Catanzarite of Catanzarite Law Corporation commenced a fraudulent and vexatious scheme targeting Plaintiff in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE.

21. The scheme in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE targeting Plaintiff involves seven frivolous and knowingly fraudulent cases or adversary cross complaints filed on behalf of directly adverse parties without standing or objective probable cause.

22. Using SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE, Kenneth J. Catanzarite deliberately abused the court system to exploit Plaintiff and others, created, and exacerbated Plaintiff's disability with Defendant, willfully corrupted due process for Plaintiff and other innocent people, repeatedly misled judicial officers inside and outside Defendant's walls, engaged in non-judicial acts of fraud to perpetuate his fraudulent schemes, and is now taking advantage of Plaintiff's disability with Defendant maliciously to cover it all up.

23. For the first case, filed for a non-shareholder of MFS in a fraudulent derivative action:

   (1) The Pinkerton Action. *Denise Pinkerton v. Cultivation Technologies, Inc., et al.,* OCSC No. 30-2018-01018922. Catanzarite filed this lawsuit on September 14, 2018, on behalf of an elderly woman (via an attorney in fact) who invested all her retirement savings in MFS shares. This shareholder, individually and derivatively on behalf of MFS, asserted CTI, Probst, O'Connor, Cooper, and [Plaintiff] involved with CTI, engaged in fraud, conversion, breach of fiduciary duty, conspiracy, fraudulent concealment, and theft of trade secrets. In addition to damages, this derivative action demanded the cancellation of CTI stock certificates, an injunction preventing the sale of CTI stock, an injunction forcing CTI to stop using MFS's trade secrets, and the payment of punitive damages and attorney fees. For this lawsuit, CTI attorney of record was Winget, Spadafora, Schwartzberg LLP (Winget). On January 23, 2019, a few days before Catanzarite filed a shareholder derivative action involving CTI shareholders, Catanzarite dismissed several defendants from the Pinkerton Action, including CTI and members of the O'Connor Faction (O'Connor and Cooper). It also deleted causes of action for misappropriation of trade secrets, unfair competition, and declaratory relief against CTI. In August 2019, Catanzarite amended the complaint to remove all shareholder derivative causes of action on behalf of MFS. Thus, the only defendants remaining were members of the Probst Faction (Probst, Justin Beck, I'm Rad, LLC, Robert Kamm, Robert Bernheimer, Irving Einhorn, and Miguel Motta). *Fincanna Capital Corp. v. Cultivation Tech.,* No. G058700, 3 (Cal. Ct. App. Jun. 28, 2021) [The derivative action filed by Catanzarite was compromised without court approval (See F.R.Civ.P.23.1(c) and Exhibit 1). After serving 5,000 discovery requests including 500 on MFS itself, Catanzarite simply took over its adversary, MFS, by allegedly extorting signatures and property from O'Connor, Cooper, Higgerson to avoid a motion for security.]

24. For the second case, rejected with "every fiber of [Court's] being" on May 1, 2019, in a trial:

(2) The MFS Action. *Mobile Farming Systems, Inc. v. Cultivation Technologies, Inc., et al.,* OCSC No. 30-2019-01046904. Catanzarite filed this lawsuit in January 28, 2019, for MFS and "derivatively on behalf of its wholly owned subsidiary [n]ominal [d]efendant [CTI]." MFS asserted it was entitled to file a derivative action because it organized CTI and acquired 28,000,000 shares of CTI common stock, and therefore, CTI was its wholly owned subsidiary. The complaint asserted MFS contributed assets to CTI (a seedling trailer and a shipping container) and paid start-up costs. MFS sought cancellation of CTI's shares as well as any "insider loans and transactions." It alleged CTI owed MFS "$75,007.24 plus accrued interest of $12,444.29" (MFS's start-up loan) and other damages to be proven at trial. (Underline omitted.) The complaint sought attorney fees, punitive damages, and interest. The lawsuit was based on the premise that no CTI shareholders, other than MFS shareholders, had any valid stock or voting rights. This complaint also asserted the Probst Faction violated Corporations Code section 1507 by "preparing, signing and circulating false minutes, issuing securities, transacting business with insiders, [and] borrowing money from insiders and records relating to CTI." MFS requested that the court enjoin the Probst Faction from operating CTI until the court held a section 709 hearing "to determine the rightful ownership of CTI, its appropriate [b]oard of [d]irectors, and executive structure. The court initially granted a temporary restraining order (TRO). According to Probst, the TRO was financially devastating for CTI because "CTI's operations ground to a halt" for several months. Probst declared, "CTI did not have access to its working capital and... key customers became aware of the TRO and refused to continue to place orders and the cash flow began to severely suffer." The court dissolved the TRO in May 2019, after holding a section 709 hearing. The court determined MFS was not a CTI shareholder and could not challenge the election of CTI's directors. In August 2019, the same day Catanzarite amended the Pinkerton Action to be a direct rather than derivative action, Catanzarite also transformed the MFS Action into a direct action. The first amended complaint (FAC) omitted CTI as a party and alleged only direct claims against members of the Probst Faction [including Plaintiff] for breach of fiduciary duty, conversion, misappropriation of trade secrets, and unfair competition. *Fincanna Capital Corp. v. Cultivation Tech.,* No. G058700, 4-5 (Cal. Ct. App. Jun. 28, 2021) [Facing a trial of fact (709 trial) Mr. Catanzarite knew he would lose, he knew he had to place another chess piece on the board to further monopolize due process rights of everyone with impunity].

25. For the third case, directly conflicting with the first/second case as all three were operative:

(3) The Mesa Action. *Mesa, et al. v. Probst, et al.,* OCSC No. 30-2019-01064267. Catanzarite filed this shareholder derivative class action on April 16, 2019. The complaint asserted the "nature of [the] action" was on behalf of shareholders owning both MFS and CTI shares seeking to "join MFS in a consolidated action with [the MFS Action] and to among other relief, recognize the ownership and control of CTI as held by" four groups of shareholders. (Capitalization and bold omitted.) These shareholder groups included MFS (holding 28,000,000 CTI shares), as well as any MFS shareholders who purchased CTI shares in various offerings. The complaint expressly excluded shares held by Probst Faction members, their attorneys, agents, or affiliates. Richard Mesa initiated the lawsuit in three capacities: (1) individually as a "shareholder of both" MFS and CTI shares; (2) in a representative capacity on behalf of over 100 similarly situated shareholders; and (3) derivatively on behalf of CTI. The Mesa Action asserted nine causes of

action against the Probst Faction and CTI as a nominal defendant. Identical to allegations in the MFS Action, the Mesa Action sought to enjoin the Probst Faction from operating CTI until there could be an expedited section 709 hearing. In addition to damages, the class sought punitive damages and attorney fees. One month later, Catanzarite amended the complaint to add Cooper and Tom Mebane as plaintiffs and FinCanna as a defendant. More significantly, the complaint's "nature of the action" changed. The class members no longer sought to join the MFS Action or seek recognition of MFS's controlling shares over CTI. Instead, the Mesa Action plaintiffs sought to declare the current CTI directors' meetings and actions void. In particular, the class sought to unravel CTI's financial dealings with FinCanna, who had just foreclosed on CTI's properties. The FAC included two new causes of action, as well as allegations the Probst Faction wrongfully liquidated CTI's assets and that FinCanna should not have initiated foreclosure proceedings. The FAC asserted FinCanna "claims ownership of the extraction facility and CTI's employees have effectively become [FinCanna] employees." Furthermore, it maintained CTI shareholders "have suffered a total loss of their share value of not less than $5,000,000 and millions more in business opportunities...." CTI's attorney of record, Winget, filed an answer asserting the plaintiffs lacked standing or were not qualified to maintain a derivative lawsuit on CTI's behalf. In October 2019, the Mesa Action plaintiffs filed a motion requesting the court appoint a receiver for CTI. *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 5-6 (Cal. Ct. App. Jun. 28, 2021)

26. Summarizing conflicts of interest on May 1, 2019, and implications on disabled Plaintiff:

"Thus, to briefly recap, at this point Catanzarite's concurrent and successive representation of adverse parties included the following: (1) Catanzarite was representing the Roots' elder abuse lawsuit against CTI and some of its Founders (the Probst Faction) as well as a derivative action against MFS; (2) Catanzarite had made a deal with a handful of CTI Founders to dismiss them from the Pinkerton Action [without court approval, which is necessary to prevent collusion under state and federal law, including F.R.Civ.P. 23.1(c)]; (3) it became MFS's counsel of record [after suing the company and taking it over]; (4) Catanzarite filed a derivative shareholder lawsuit for MFS, claiming 100 percent control and ownership of CTI, despite having lawsuits filed by other people claiming to be MFS shareholders; and (5) after filing two *derivative* shareholder lawsuits, Catanzarite filed a third derivative action (the Mesa Action) claiming to represent a different set of outsider shareholders, i.e., a class of derivative shareholders willing to join in the MFS Action but also independently seeking damages from CTI, its current shareholders, and board of directors." *Beck v. Catanzarite Law Corp.*, No. G059766, 17 (Cal. Ct. App. Jul. 13, 2022)

27. For the fourth case, even though an auditor was already engaged as part of a public merger:

(4) The Cooper Action. *Cooper, et al., v. Cultivation Technologies, Inc.*, OCSC No. 30-2019-01072443. On May 23, 2019, Catanzarite filed an action directly against CTI on behalf of two CTI shareholders (Cooper and Mebane), who were members of the O'Connor Faction. The previous day, FinCanna had filed a breach of contract action against CTI and CTI Subsidiaries and requested a receivership. The Cooper Action requested the court direct CTI to (1) hold a shareholder's meeting to elect a board of directors; (2) deliver an annual report; (3) appoint an accountant to conduct an audit; and (4) order CTI to pay the costs for an investigation, audit, and costs of the suit. Winget, on behalf of CTI filed an opposition, asserting a shareholder meeting was scheduled for August 2019. *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 6-7 (Cal. Ct. App. Jun. 28, 2021) [Catanzarite is also suing Ms. Cooper, and "tolling claims," now.]

28. For the fifth case, filed by Mr. Catanzarite corruptly, willfully, and without authority:

(5) The FinCanna Action Cross-complaint. *FinCanna v. Cultivation Technologies, Inc., et al.*, OCSC No. 30-2019-01072088. As mentioned, in May 2019, FinCanna filed a breach of contract action against CTI and CTI Subsidiaries. On July 2, 2019, Catanzarite filed a cross-complaint on behalf of CTI and CTI Subsidiaries against FinCanna and three of its directors. Large sections of the cross-complaint appear to have been cut and pasted from the Mesa Action complaint. Catanzarite purported to represent CTI and its subsidiaries. In Probst's declaration, prepared to oppose the section 709 request in the Mesa Action, he explained Catanzarite's actions in the FinCanna Action created confusion and harm. He noted Catanzarite filed a cross-complaint and propounded discovery against CTI's "primary secured lender" without telling CTI's board "and during a time when FinCanna has not yet served their complaint on CTI due to ongoing settlement negotiations." *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 7 (Cal. Ct. App. Jun. 28, 2021) [CTI is not, and has never been, a *bona fide* client of Catanzarite.]

29. For the sixth case, also filed by Mr. Catanzarite corruptly, willfully, and without authority:

(6) The Scottsdale Action. *Cultivation Technologies, Inc., v. Scottsdale Insurance Company*, OCSC No. 30-2019-01096233. On September 6, 2019, Catanzarite filed this declaratory relief action purporting to represent CTI. In this lawsuit, CTI demanded that its insurance company, Scottsdale, stop providing a defense or indemnity to the Probst Faction defendants in the Mesa Action. The complaint asserted Scottsdale "refused to communicate with the officers and directors elected by the common shareholders of CTI and who are of the position that only they and their elected officers and directors speak for CTI." In the complaint, CTI sought the court's declaration of its rights under the insurance policy and orders forbidding Scottsdale from providing a defense "unless and until the vote of the disinterested common shareholders of CTI [was] obtained." We note that immediately before filing the Scottsdale Action, Catanzarite amended the complaints in the first two derivative actions transforming them into direct actions against individuals who were part of the Probst Faction (the Pinkerton and MFS Actions). Additionally, after filing the Scottsdale Action, Catanzarite dismissed the Cooper Action on September 13, 2019. *Fincanna Capital Corp. v. Cultivation Tech.*, No. G058700, 7-8 (Cal. Ct. App. Jun. 28, 2021) [Catanzarite separately claims MFS is the sole shareholder of CTI].

30. For the seventh case, deliberately concealing 709 trial findings, known facts in violation of California Rules of Professional Conduct 3.3, with ongoing intent to defraud:

(7) The MFS Cross Action. *Justin S. Beck v. Kenneth Catanzarite, et al.*, OCSC No. 30-2020-01145998. On August 12, 2020, Catanzarite purporting to represent the company MFS it sued derivatively September 14, 2018, assumed control over in January 2019, essentially refiled the MFS Action against Plaintiff while concealing the material facts of the 709 Trial on May 1, 2019, in violation of California Rules of Professional Conduct 3.3. Catanzarite also assumed the role of counsel of all defendants, including those it was suing and tolling claims against to "bring later": Amy Cooper, Richard O'Connor, Cliff Higgerson, and the other CTI shareholders that it was expressly disqualified from representing: Mohammed Zakhireh, James Duffy, and others.

## DEFENDANT IS WILLFULLY VIOLATING PLAINTIFF'S CIVIL RIGHTS

31. On May 1, 2019, a 709 trial of fact rejected claims filed against Plaintiff with "every fiber of the [Court's] being" citing "overwhelming evidence." Despite this, the same fraudulent claims are redirected at plaintiff, and allowed by Defendant. Plaintiff incorporates **EXHIBIT 1** here.

32. Notably, the 709 trial concluded that O'Connor and Cooper were responsible for the conduct that Catanzarite is using the inanimate shell, MFS, to direct at Plaintiff using Defendant. It should come as no surprise that these individuals are cooperating with Catanzarite in furtherance of the scheme as the claims are tolled against them to "bring later."

33. On June 28, 2021, four disqualification orders against Catanzarite Law Corporation, Kenneth Catanzarite, Brandon Woodward, Tim James O'Keefe, and Nicole Marie Catanzarite Woodward (together "Catanzarite") were upheld by Court of Appeal. Despite this, Catanzarite is still representing CTI shareholders from which it was expressly disqualified from representing.

34. On July 13, 2022, four Anti-SLAPP orders were overturned by Court of Appeal in favor of Plaintiff, who showed a *prima facie* case for malicious prosecution of the Pinkerton Action, MFS Action, and Scottsdale Action as being filed by Catanzarite against Plaintiff in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE, without objective probable cause, achieving favorable termination reflecting Plaintiff's innocence, with malice. Despite this, Catanzarite is still maliciously prosecuting Plaintiff, re-trying adjudicated matters filed on behalf of parties it is suing and tolling claims against, in each case to take advantage of Plaintiff's disability and indigent status aided by Defendant to cover up the fraudulent schemes.

35. In October 2022, Catanzarite propounded discovery against Plaintiff on behalf of Kenneth Catanzarite, Catanzarite Law Corporation, Brandon Woodward, Tim James O'Keefe, Amy Jeanette Cooper, Cliff Higgerson, Mohammed Zakhireh, Richard Francis O'Connor, Jr., James Duffy, TGAP Holdings, LLC, and Mobile Farming Systems, Inc. and later moved to compel him to produce responses as it continued to represent adverse parties from which it was disqualified from representing in violation of California Rules of Professional Conduct 1.7(d)(3) and 1.9. Not only is Catanzarite adverse to them directly in the same case for malicious prosecution, but Catanzarite is tolling claims against most from a false derivative action against MFS.

36. On the evening of December 1, 2022, Plaintiff suffered a new onset seizure as a direct and proximate result of ongoing, illegal harassment by Catanzarite in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE, contraindication of medication Plaintiff commenced directly caused by intentional infliction of emotional distress against him, and the ongoing fraudulent scheme and due process violations that caused, now exacerbates, his disability protected by Title II of the ADA.

37. Plaintiff has two other cases pending in U.S. Southern District of California, alleging, *inter alia,* violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), federal antitrust laws, and Fourteenth Amendment violations: *Justin S. Beck v. Catanzarite Law Corporation, et al.* 3:22-CV-01616-AGS-DDL which names Orange County Superior Court and Judge John C. Gastelum as defendants, and *Justin S. Beck v. State of California,* 3:23-CV-0164-AGS-DDL.

38. Plaintiff has two pending cases before SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE: *Justin S. Beck v. Kenneth Catanzarite, Esq. et al.* (OCSC 30-2020-01145998) filed May 26, 2020, by counsel, where motions to compel were filed, lying in malicious prosecution and intentional infliction of emotional distress, and *Justin S. Beck v. The State Bar of California, et al.* (OCSC Case No. 30-2021-01237499) lying in negligence, corruption, and fraud.

39. After suing The State Bar of California (which has allegedly coerced various acts of Defendant with malice to conceal public corruption, and whose staff is allegedly bribed by Catanzarite) and State of California (which *refuses* to appear in Superior Court despite service), government employees have engaged in a relentless campaign to oppress Plaintiff and retaliate against him for seeking redress of genuine grievances under Government Claims Act.

40. Plaintiff's genuine claims are supported by overwhelming evidence consisting of court orders related and unrelated to Plaintiff showing Catanzarite's pattern of serial fraud and vexatious litigation inside and outside Defendant walls. Defendant is carrying this on with malice.

41. It strains credulity that judicial officers and staff for Defendant, despite notice, and even after Courts of Appeal have disqualified Catanzarite Law Corporation, Kenneth Catanzarite, Brandon Woodward, Tim James O'Keefe, and Nicole Marie Catanzarite Woodward (together "Catanzarite") for violations of mandatory law – are still enabling Catanzarite to target Plaintiff.

12

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE CONDUCT

42. Plaintiff is unable to cognitively function sufficiently to access government services of Defendant, or protect himself from serial violations of law, without accommodations and relief.

43. Defendant allows Catanzarite to break mandatory law and virtually every rule in the proverbial book, yet Plaintiff is somehow required to conform to minutiae despite Court of Appeal findings.

44. Defendant allows Catanzarite to violate California Rules of Professional Conduct every day but requires the disabled Plaintiff to conform to the most rigorous standards of California Code of Civil Procedure while disregarding Catanzarite's *adjudicated* fraud and disregard of the rules.

45. Facing unlawfully filed motions to compel discovery (Rule 1.7(d)(3) and Rule 1.9) amidst un-waivable conflicts of interest set for May 5, 2023, hearing – the disabled Plaintiff found an ADA advocate to alert Defendant of his needs, acute harm, and federally protected rights.

46. Showing Defendant's malice for Plaintiff separately, Orange County Superior Court Case No. 30-2021-01237499 was remanded to Defendant on January 12, 2023, for lack of removal jurisdiction. Defendant would later comment on March 29, 2023, that Defendant lacked jurisdiction, which was materially false. Plaintiff alleges Defendant is retaliating against Plaintiff for naming Defendant in 3:22-CV-01616-AGS-DDL as an alleged RICO enterprise defendant, and for naming John C. Gastelum, the judicial officer in C11, for allegedly agreeing to violate substantive provisions of RICO with State Bar's Suzanne Grandt. (See Docket #50 in that case).

47. On February 15, 2023, after Orange County Superior Court Case No. 30-2021-01237499 was remanded to Defendant January 12, 2023, Defendant surreptitiously *removed* ROA #101, #103, #107, and #111 from Plaintiff's record (summary judgment papers accepted in July 2022).

48. Facing malicious motions to compel filed amidst directly adverse parties which completely inhibit Plaintiff from achieving fair or neutral hearings, on March 28, 2023, at 9:26 AM, Plaintiff made his first request to ADAinformation@occourts.org : "Please see the attached ADA accommodation requests for: Dept. CX105 – Case No. 30-2020-01145998 (+ Related Cases in CX105)[, and] Dept. C11 – Case No. 30-2021-01237499. I've included evidentiary support of a new onset seizure resulting from my disability. If you require anything else, please let me know. Thank you for your assistance." (Hereinafter, ADA Request #1)

13

49. Plaintiff identified for the ADA coordinator and court the procedural harassment to which he was subject, the threat to his health, un-waivable conflicts, and the mandatory law violations under which motions to compel were pending and still allowed by Defendant, unequally.

50. On March 28, 2023, at 2:39 PM, Plaintiff received a reply from "Becky Torres, ADA Coordinator" that his "ADA accommodation requests have been received and will be forwarded for judicial review."

51. On March 29, 2023, at 9:02 AM, Plaintiff received a reply from "Becky Torres, ADA Coordinator" that she had "been informed that case 30-2021-01237499 has been removed to Federal Court" and that they "no longer have any jurisdiction over [that] case" which was false.

52. Plaintiff informed Ms. Torres on April 4, 2023, he would be filing expanded accommodation requests under ADA after reviewing Defendant's Title II obligations and his due process rights.

53. For ADA Request #1, Plaintiff was granted nominal accommodation of a court watcher after informing the court he was filing expanded needs. Plaintiff was also directed to file for protective order to restrain the procedural harassment by Catanzarite and discrimination of Defendant.

54. After conferring with his advocate, Plaintiff filed expanded accommodation requests ("ADA Request #2"). He did not know that his protective order would be disregarded maliciously.

55. On April 17, 2023, Plaintiff filed a cross-motion for a protective order and opposition to motions to compel as directed by the court to prevent the procedural harassment, discrimination, and violations of mandatory law to which he is subject by Catanzarite and Defendant.

56. On April 17, 2023, Plaintiff filed an ex parte application for entry of protective order to prevent the procedural harassment, discrimination, and violations of mandatory law to which he is subject by Catanzarite and Defendant.

57. On April 18, 2023, Plaintiff received a discriminatory complete denial of ADA Request #2 on the basis that Plaintiff's "requested accommodations are not reasonable" which Plaintiff alleges to be triable. Plaintiff had a clearly established right to equal access to Defendant services.

58. Also, on April 18, 2023, Plaintiff received a discriminatory order that his "ex parte application [was] denied without a hearing. No good cause to have this matter heard on shortened notice by an Ex Parte Application" which Plaintiff alleges to be triable, malicious, and willful.

14

59. After April 18, 2023, Plaintiff's advocate repeatedly contacted Ms. Torres of the emergency circumstances, seeking to speak with a supervisor to understand Defendant's conduct toward Plaintiff, and to alert Defendant of the further, irreparable harm that Defendant's refusal to accommodate, discrimination, and retaliation, was causing and would cause Plaintiff.

60. Despite Plaintiff filing for protective order to receive accommodation needed to prevent his harm and due process violations, where Defendant knew of the irreparable harm to which he was subject, Defendant acted with actual malice to Plaintiff, or at least indifference by denying it without a hearing. Defendant repeatedly grants Catanzarite the opportunity to move ex parte, no matter how frivolous. Defendant repeatedly discriminates against Plaintiff due to his disability.

61. On April 21, 2023, Plaintiff filed opposition to motions to compel discovery filed by Catanzarite amidst un-waivable conflicts, after 5-years of fraudulent, vexatious litigation in SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE prefaced by similar patterns since 2005.

62. On May 5, 2023, Plaintiff's advocate once more contacted Ms. Torres, who refused to answer.

63. Ms. Torres and Defendant further refuse to address the manipulation of records in Orange County Superior Court Case No. 30-2021-01237499, or the fact that Defendant refuses to enter defaults against State of California despite the case being remanded on January 12, 2023. State of California was served, will not answer, will not appear, and Defendant will not enter default.

64. On May 5, 2023, without regard of Plaintiff's due process rights, serious disability, ADA needs, known harm, or Catanzarite's fraud, prior vexatious litigation and mandatory disqualification under Rule 1.7(d)(3) and Rule 1.9, Defendant entered four orders compelling Plaintiff to produce: Form Interrogatories, Set One from Kenneth Catanzarite, Esq.; 102 separate Special Interrogatories from "Defendants Kenneth Catanzarite, Catanzarite Law Corporation, Brandon Woodward, Tim James O'Keefe, Amy Jeanette Cooper, Cliff Higgerson, Mohammed Zakhireh, Richard Francis O'Connor, Jr., James Duffy, TGAP Holdings, LLC, and Mobile Farming Systems, Inc." (all of whom 1) Catanzarite is either suing and tolling claims against from a fraudulent derivative action filed without standing on September 14, 2018 that was compromised without Defendant approval, which is required to prevent collusion, 2) Catanzarite was disqualified from representing by Court of Appeal, and/or 3) Catanzarite is barred by mandatory

1  law from representing); Request for Production of Documents, Set One from Kenneth
2  Catanzarite; and 94 Requests for Production of Documents from "Defendants Kenneth
3  Catanzarite, Catanzarite Law Corporation, Brandon Woodward, Tim James O'Keefe, Amy
4  Jeanette Cooper, Cliff Higgerson, Mohammed Zakhireh, Richard Francis O'Connor, Jr., James
5  Duffy, TGAP Holdings, LLC, and Mobile Farming Systems, Inc." (all of whom 1) Catanzarite
6  is either suing and tolling claims against from a fraudulent derivative action filed without
7  standing on September 14, 2018 that was compromised without Defendant approval, which is
8  required to prevent collusion, 2) Catanzarite was disqualified from representing by Court of
9  Appeal, and/or 3) Catanzarite is barred by mandatory law from representing).

10  65. On May 5, 2023, in addition to compelling the disabled Plaintiff to produce thousands of
11  documents to his abusers with a well-documented history of fraud, the Court also ordered
12  Plaintiff, who is now indigent as a direct result of Catanzarite's fraudulent scheme with
13  Defendant, *to pay his abusers sanctions* of $310, $1,435, $1,185, and $60 ($2,990 total).

14  66. On May 9, 2023, more than ten-days after requesting the information, Defendant delivered
15  Plaintiff's advocate (but not Plaintiff) "Confidential Re: ADA Request in Beck v. Catanzarite
16  30-202[0]-01145998." ("May 9 Letter")

17  67. The May 9 Letter claimed that Plaintiff's ADA needs were somehow estopped under color of
18  state law or local procedure, and that Plaintiff's ability to challenge Defendant's refusal to
19  accommodate would require "[a] petition for writ review [which] must be filed within 10 days
20  (plus 5 days for mail) of the Court's order on the accommodation request" dated April 18, 2023.

21  68. Writ relief is extraordinary, and the disabled Plaintiff's ability to petition is purportedly past.
22  Further, Plaintiff is unduly prejudiced in that he was concurrently being compelled to produce
23  information illegally to his abusers as he was concurrently purportedly required to file a writ
24  petition within 10-days that had past, with a debilitating disability.

25  69. But for Defendant's aiding of Catanzarite and mutual exploitation of Plaintiff's disability,
26  Plaintiff would not lack legal counsel for these matters but for the fraudulent scheme and his
27  indigent status caused thereby.

28

70. Plaintiff has been denied federally mandated disability accommodations by Defendant under color of law, retaliated against for naming Defendant and one of its judicial officers in 3:22-CV-01616-AGS-DDL, discriminated against due to his disability, discriminated against due to his requests for disability accommodations, and discriminated against for "calling out" the 5-year fraudulent scheme involving Defendant to which he and other innocent people are subject.

71. Plaintiff exhausted all purported procedural remedies in state courts as set forth in the May 9 Letter. Plaintiff brings this action as a last resort where Defendant refuses to protect Plaintiff in overt discrimination with malice. Defendant seeks to oppress and overwhelm Plaintiff by compelling him to produce information to which his abusers are not lawfully entitled, at least not within any neutral forum acting reasonably under the circumstances under ADA, Title II.

72. As direct and proximate cause of Defendant, Catanzarite, and those acting in concert with each, Plaintiff has suffered irreparable harm and now faces further threats to take advantage of his disability. At this point, Defendant is acting in active concert with Catanzarite to exploit Plaintiff.

73. Under the circumstances, in light of the factual record regarding Plaintiff spanning five years with related Court of Appeal rulings, and the cumulative record of Catanzarite's patterns of willful abuse and serial fraud dating back to 2005 by court orders and public records produced to Plaintiff by The State Bar of California, Defendant's conduct against Plaintiff is despicable, outrageous, willful, and no person should reasonably be required to bear it. Defendant's conduct against Plaintiff falls outside what any reasonable person would deem acceptable in a normal, civilized society. Plaintiff demands neutral forum to try Defendant's abuse before a jury of peers.

74. The ADA violations to which Plaintiff was subject and is being subject are reckless, wanton, and clear violations of Plaintiff's due process rights as well as his right to equal protection under the law, each protected by the Fourteenth Amendment.

75. United States Congress explicitly provides the United States and U.S. District Court authority to enforce the Fourteenth Amendment against Defendant to protect and compensate Plaintiff.

76. *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) "Held: Insofar as Title II creates a private cause of action for damages against State for conduct that actually violates the Fourteenth Amendment, **Title II validly abrogates state sovereign immunity**" at Pp. 157-160.

17

## FIRST CAUSE OF ACTION

### DENIAL OF ACCESS UNDER ADA, TITLE II

77. Plaintiff incorporates paragraphs 1 through 76 by reference as if set forth fully here.

78. Plaintiff brings this first cause of action against Defendant for denial of access under the ADA.

79. Under 42 U.S.C. § 12101(a), "[t]he Congress finds that—(1) physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination," and that "(3) discrimination against individuals with disabilities persists in such critical areas as....access to public services," and that "(4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination," and that "(5) individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion...and communication barriers, overprotective rules and policies, failure to make modifications to existing...practices, exclusionary qualification standards and criteria...and relegation to lesser services, programs, activities, benefits...or other opportunities."

80. Under 42 U.S.C. § 12101(b), "[i]t is the purpose of this chapter—(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities."

81. Under 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

18

82. Under federally mandated regulations codified by Title II, § 35.150(a), Defendant "shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."

83. For all times relevant, Defendant had a duty to the qualified, disabled Plaintiff to provide ready access to Defendant services under ADA, Title II, § 35.150(a).

84. From September 14, 2018, through present, Defendant has knowingly engaged or ratified in a scheme wherein Plaintiff was denied equal access to Defendant services on the basis of Plaintiff's disability. Defendant repeatedly violated Plaintiff's clearly established due process rights and engaged in willful or indifferent abuse of those rights knowing Plaintiff's harm.

85. When viewed in the entirety, Defendant services are virtually unusable and inaccessible by the disabled Plaintiff under the circumstances. Defendant unreasonably denies Plaintiff ready access to Defendant services with knowledge of Plaintiff's disability, actual harm and the malicious scheme to which he has been, and is being, subject, through Defendant's unequal providing of government services to others.

86. ADA, Title II is a mandate of United States Congress for Defendant where ADA, Title II provides implementation instructions for Defendant and mandatory duties to Plaintiff.

87. Under Cal. Gov. Cod. § 815.6, where Defendant "is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

88. As direct and proximate cause of Defendant's violations of 42 U.S.C. § 12132 and ADA, Title II, § 35.150(a), Plaintiff has suffered severe emotional distress consisting of daily suffering, anxiety, humiliation, and a seizure which now precludes him from taking contraindicating medication to treat his symptoms. Plaintiff is willfully being denied equal access to a neutral court by Defendant to harass and vex him, which is his right as a citizen, free of due process violations. Plaintiff is willfully being denied equal protection under the law, where Defendant nefariously favors the rights of Catanzarite and those working in concert with them, unequally applying the laws of California and the United States, with malice.

89. WHEREFORE, Plaintiff seeks the Court enter judgment in his favor against Defendant for denial of access under 42 U.S.C. § 12132, ADA, Title II, § 35.150(a) with liability for damages arising from ADA, Title II (*United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) or Cal. Gov. Cod. § 815.6. As an alternative, damages in favor of Plaintiff arise from Cal. Gov. Cod. § 815.2 for the conduct of Defendant's staff.

90. WHEREFORE, Plaintiff seeks the Court enter order enjoining Defendant from further restricting Plaintiff's equal access to government services in accordance with his needs; enjoining due process violations by Defendant unlawfully requiring him to produce information to serial abusers associated with Catanzarite while it engages in un-waivable conflicts of interest; enjoining due process violations by Defendant unlawfully enabling un-waivable conflicts of interest to harass and vex the disabled Plaintiff; enjoining equal protection clause violations by Defendant which unreasonably caters to and advances the interests of attorneys engaged in actual fraud on the Court and un-waivable conflicts of interest to the detriment of the disabled Plaintiff, unequally; and awarding Plaintiff economic and non-economic compensatory damages according to proof in trial under ADA, Title II (*United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) or Cal. Gov. Cod. § 815.6. As an alternative, damages in favor of Plaintiff arise from Cal. Gov. Cod. § 815.2 for the conduct of Defendant's staff.

1

## SECOND CAUSE OF ACTION

2

## FAILURE TO ACCOMMODATE UNDER ADA, TITLE II

3
91. Plaintiff incorporates paragraphs 1 through 90 by reference as if set forth fully here.

4
92. Plaintiff brings this second cause of action against Defendant for failure to accommodate under

5
the ADA.

6
93. Under federally mandated regulations codified by Title II, § 35.150(b)(1)(i), Defendant "in

7
providing...service, may not, directly or through contractual, licensing, or other arrangements,

8
on the basis of disability—deny a qualified individual with a disability an opportunity to

9
participate in or benefit from the...services that is not equal to that afforded others."

10
94. Under federally mandated regulations codified by Title II, § 35.150(b)(3), Defendant "may not,

11
directly or through contractual or other arrangements, utilize criteria or methods of

12
administration—(i) That have the effect of subjecting qualified individuals with disabilities to

13
discrimination on the basis of disability; (ii) That have the purpose or effect of defeating or

14
substantially impairing accomplishment of the public entity's program with respect to

15
individuals with disabilities."

16
95. From March 28, 2023, when noticed of Plaintiff's disability, irreparable harm, special needs, and

17
the extraordinary violations of due process and mandatory law to which he is subject by

18
Defendant, Defendant unreasonably denied Plaintiff an opportunity to participate in Defendant

19
services in a manner unequal to others. Indeed, Catanzarite's due process rights are treated by

20
Defendant as being superior to Plaintiff's even after Defendant was made factually aware of

21
Plaintiff's disability and the serial fraud to which Plaintiff is subject reflected by Court of Appeal,

22
U.S. District Court, and 11th Circuit Court of Appeal rulings among at least five separate

23
fraudulent schemes by Catanzarite.

24
96. From March 28, 2023, when noticed of Plaintiff's disability, irreparable harm, special needs, and

25
the extraordinary violations of due process and mandatory law to which he is subject by

26
Defendant, Defendant used methods of administration having the effect of subjecting Plaintiff

27
to discrimination based on his disability, or in the alternative, that had the purpose or effect of

28

21

defeating or substantially impairing accomplishment of Defendant's program of operating a neutral court with respect to Plaintiff.

97. The foregoing code sections are also mandatory duties imposed on Defendant by United States Congress under Title II of the ADA, and Defendant failed to exercise reasonable diligence to discharge the duty to Plaintiff under Cal. Gov. Cod. § 815.6.

98. As direct and proximate cause of Defendant's violations of 42 U.S.C. § 12132, ADA, Title II, § 35.150(b), Plaintiff has suffered severe emotional distress, anxiety, humiliation, and shame from Defendant's treatment of and discrimination against Plaintiff. Defendant is compelling the disabled Plaintiff to produce yet more information to serial abusers without regard for mandatory law after 5-years of due process violations and equal protection clause violations involving Defendant, even after the Court of Appeal has concluded serial violations of mandatory law against Plaintiff within Defendant's public facilities. Plaintiff experiences horror and anguish at the implications of producing more information that no reasonable Court would order against a disabled person, under the circumstances, in light of the facts and Court of Appeal rulings known to Defendant and un-waivable conflicts of interest that are no fault of Plaintiff. Plaintiff has suffered and will continue to suffer worry and shock after detailing his needs, and those needs being disregarded under color of state law and local procedures by Defendant, with malice.

99. WHEREFORE, Plaintiff seeks the Court enter judgment in his favor against Defendant for failure to accommodate under 42 U.S.C. § 12132, ADA, Title II, § 35.150(b) with liability for damages arising from ADA, Title II (*United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) or Cal. Gov. Cod. § 815.6. As an alternative, damages in favor of Plaintiff arise from Cal. Gov. Cod. § 815.2 for the conduct of Defendant's staff.

100.    WHEREFORE, Plaintiff seeks the Court enter order enjoining Defendant from restricting Plaintiff's equal access to Defendant's government services in accordance with his ADA accommodation needs; enjoining due process violations by Defendant mandated under the Fourteenth Amendment; enjoining Defendant from unlawfully compelling the disabled Plaintiff to produce discovery to serial abusers associated with Catanzarite until such time that there exist no un-waivable conflicts of interest and the law is applied equally under California Rules of

Professional Conduct 1.7(d)(3) and 1.9; and awarding Plaintiff economic and non-economic compensatory damages according to proof in trial under ADA, Title II (*United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) or Cal. Gov. Cod. § 815.6. As an alternative, damages in favor of Plaintiff arise from Cal. Gov. Cod. § 815.2 for the conduct of Defendant's staff.

## THIRD CAUSE OF ACTION

## UNRUH CIVIL RIGHTS ACT

101.    Plaintiff incorporates paragraphs 1 through 100 by reference as if set forth fully here.

102.    Plaintiff brings this third cause of action against Defendant for violation of Unruh Civil Rights Act under Cal. Cod. Civ. Proc. §§ 51, 52 (incorporating Title II of the ADA) and Cal. Gov. Cod. § 815.6.

103.    Where this Court may abstain generally from supplemental jurisdiction, extraordinary circumstances of this case require invocation of supplemental jurisdiction as Plaintiff's harm is caused by a court Defendant which is maliciously violating ADA after Plaintiff's clearly established rights to protection. Plaintiff will not achieve fair adjudication of Unruh Civil Rights Act within Defendant's walls or any other branch of Superior Court.

104.    Plaintiff claims that Defendant denied him full and equal advantages, facilities, privileges, or services because of his disability or medical condition.

105.    Defendant denied, aided, or incited a denial of, discriminated, or made a distinction that denied full and equal advantages, facilities, privileges, or services to Plaintiff.

106.    A substantial or motivating reason for Defendant's conduct was its perception of Plaintiff's disability or medical condition.

107.    Plaintiff was harmed.

108.    Defendant's conduct was a substantial factor in causing Plaintiff's harm.

109.    WHEREFORE, Plaintiff seeks the Court enter judgment in his favor against Defendant for violation of Unruh Civil Rights Act, Cal. Cod. Civ. Proc. §§ 51, 52 with liability for damages arising from Cal. Gov. Cod. § 815.6.

110.    WHEREFORE, Plaintiff seeks the Court enter order awarding Plaintiff economic and non-economic compensatory damages against Defendant according to proof in trial under Cal. Gov. Cod. § 815.6, and up to three times the amount of Plaintiff's actual damages according to proof in trial under Cal. Gov. Cod. § 815.6 as a penalty against Defendant (as under CACI 3067). As an alternative, damages in favor of Plaintiff arise from Cal. Gov. Cod. § 815.2 for the conduct of Defendant's staff.

FOURTH CAUSE OF ACTION

EQUITABLE INDEMNIFICATION

111.    Plaintiff incorporates paragraphs 1 through 110 by reference as if set forth fully here.

112.    Plaintiff brings this fourth cause of action against Defendant for indemnification under Cal. Gov. Cod. § 815.6 and Title II, ADA regulations set forth above which are mandatory duty.

113.    Where Plaintiff has failed any procedural requirements set forth by Defendant or California Code of Civil Procedure resulting in compulsion of discovery from the disabled Plaintiff, Defendant is at fault for violating Title II, ADA, with knowledge and privity of illegal conduct by and with Catanzarite, and Plaintiff's federally protected rights under Title II, ADA.

114.    Defendant knows Plaintiff is suffering, and that Catanzarite is engaged in serial schemes to defraud using or with Defendant, but Defendant compelled the knowingly disabled Plaintiff to succumb to the fraudulent scheme with malice or at least indifference of the consequences.

115.    As direct and proximate cause of Defendant's actions, Defendant has knowingly compelled the disabled Plaintiff as of May 5, 2023 to produce discovery responses to Catanzarite which were unlawfully filed in the first instance with malice through Defendant, which compelled discovery responses were and are unreasonably burdensome and oppressive, and which answers should be private or confidential under the circumstances due to ongoing violations of Plaintiff's due process rights protected by the Fourteenth Amendment, California Rules of Professional Conduct 1.7(d)(3), and California Rules of Professional Conduct 1.9 which are binding under Cal. Bus. & Prof. Cod. § 6077 but disregarded by Defendant unequally and nefariously in favor of Catanzarite's fraudulent schemes shown by court orders.

116.    WHEREFORE, Plaintiff seeks the Court enter order awarding Plaintiff indemnification against Defendant for all economic damages and non-economic damages caused to or purportedly by Plaintiff after April 18, 2023, according to proof in trial under ADA, Title II (*United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) or Cal. Gov. Cod. § 815.6, including but not limited to $2,990 in sanctions issued against Plaintiff on May 5, 2023, by Defendant. As an alternative, damages in favor of Plaintiff arise from Cal. Gov. Cod. § 815.2 for the conduct of Defendant's staff.

## PLAINTIFF DEMANDS TRIAL BY JURY.

117.     For the foregoing reasons, Plaintiff requests the Court order judgment in his favor.

118.     Plaintiff seeks compensatory damages according to proof in trial under ADA, Title II, or in accordance with Government Claims Act, Cal. Gov. Cod. § 815.6, declaratory relief that he is entitled ADA accommodations by Defendant irrespective of Defendant's local customs or administrative nuances, injunctive relief to restrain future violations of ADA and indigent Plaintiff's federally protected rights to due process of law and equal protection under the Fourteenth Amendment to the U.S. Constitution, actual damages within the meaning of Unruh Civil Rights Act, treble damages within the meaning of Unruh Civil Rights Act, and any other such relief as may be deemed just by the Court or available to Plaintiff under the law.

119.     Plaintiff seeks immediate stay of State court proceedings by temporary restraining order under 28 U.S.C. § 2283 not later than May 24, 2023, in Orange County Superior Court Case No. 30-2020-01145998 as being necessary to aid in this court's jurisdiction under Title II of the ADA as being expressly authorized by Congress. If this Court does not hear or grant such temporary restraining order by May 24, 2023, Plaintiff seeks alternative injunctive relief permanently restraining and enjoining Defendant from permitting or engaging in due process violations under the Fourteenth Amendment against the disabled, indigent Plaintiff under F.R.Civ.P. 65.

120.     CERTIFICATION AND CLOSING. Under F.R.Civ.P. 11, by signing below, I certify to the best of my knowledge, information, and belief, that this complaint (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support[]; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully Submitted,

May 15, 2023,

Justin S Beck, Plaintiff

In Pro Per

Qualified Individual Under ADA, Title II

Compendium of Exhibits in Subsequent Document to Show Due Process Violations against
Disabled Plaintiff Occurring on Defendant's Premises with Malice

| Description of Evidence Supporting Plaintiff Complaint | Pages | Pages |
|---|---|---|
| Omnibus Opposition to Motions to Compel; Assertion of Clearly Established ADA Rights and Due Process Violations | 2 | 13 |
| Factual Summary with Citations to Sub-Exhibits; Disabled Plaintiff Cannot Obtain Fair Hearings or Due Process | 8 | 13 |
| Catanzarite Tells Superior Court, Count of Orange that Its Own Conflicts of Interest Harm Its Attorneys Due Process Rights | 18 | 18 |
| Showing Catanzarite is Materially Adverse to MFS Before Taking it Over to Harass, Vex, and Defraud Disabled Plaintiff | 75 | 85 |
| Showing Catanzarite is Materially Adverse to Cooper, Made Contact with Her While She Was Represented by Counsel | 90 | 90 |
| Deliberate Acts of Fraud Induced By Catanzarite to Unwind Millions of Dollars in Securities Transactions | 92 | 93 |
| Catanzarite Threatens Plaintiff He is "Working with Law Enforcement" to Extort Him After Taking Over MFS Illegally | 95 | 96 |
| Showing Catanzarite is Materially Adverse to Higgerson, Too – and Roger Root Was Not a Shareholder of MFS | 98 | 101 |
| Catanzarite is Warned of the Implications of Its Scheme and the Absurdity of False Claims Propounded v. Disabled Plaintiff | 103 | 106 |
| Catanzarite is "Tolling Claims" Against Parties It is Propounding Discovery From v. Disabled Plaintiff | 123 | 124 |
| 709 Trial Rejects Fraudulent Claims v. Plaintiff; Catanzarite Just Refiles Them and Conceals Findings v. Disabled Plaintiff | 126 | 182 |
| CTI Shareholder Carlos Calixto Declares Catanzarite Tried to Bribe Him – He Declined; So Calixto's Signature was Forged | 184 | 186 |
| Caption/Sig. for 30-2018-01018922: Catanzarite Adverse to MFS, Cooper, Higgerson, O'Connor in False Derivative Action | 196 | 198 |
| Caption/Sig. Catanzarite Takes Over MFS to Avoid Motion for Security, Assumes "Counsel" for MFS Itself | 200 | 201 |
| Caption/Sig. for 30-2019-01064267 Catanzarite Sues on Behalf of CTI Shareholders it Separately Claims Doesn't Exist | 203 | 204 |
| Catanzarite Amends using Forged Signature of Calixto After Failing 709 Trial Adding Adverse Party Cooper as "Client" | 206 | 208 |
| Catanzarite Assumes "Counsel" Role for CTI Itself without Authority as it Sues CTI Itself using MFS | 210 | 211 |
| Catanzarite Amends MFS Action 30-2019-01046904 Omitting All Factual Conclusions of 709 Trial and Evidence | 213 | 214 |
| Catanzarite Amends Derivative Claims v. MFS in Pinkerton Action 30-2018-0108922 without Court Approval | 216 | 217 |

| | | |
|---|---|---|
| Caption/Sig. for 30-2019-01096233 Catanzarite Sues on Behalf of CTI itself as it Sues CTI, Remove Plaintiff Defense | 220 | 226 |
| Catanzarite Sues Plaintiff Using MFS After Suing MFS, Taking it Over, and Ignoring 709 Trial Conclusions and Evidence | 227 | 229 |
| Showing Catanzarite Law Corporation is MFS – and O'Connor, Cooper, Duffy are Pawns to Malign Disabled Plaintiff (2022) | 231 | 232 |
| Showing Catanzarite Law Corporation is MFS – and O'Connor, Cooper, Duffy are Pawns to Malign Disabled Plaintiff (2020) | 234 | 236 |
| May 8, 2020 U.S. Bankruptcy Court Order v. Catanzarite: Order Liquidating and Awarding Compensatory Sanctions | 241 | 247 |
| July 7, 2021 U.S. Southern District of Florida, Order Affirming Order of Bankruptcy Court (Violation of Injunction, Etc.) | 249 | 260 |
| May 8, 2020 U.S. Bankruptcy Court Order v. Catanzarite: $49,020.50 in Sanctions + $11,639.25 in Sanctions | 262 | 267 |
| January 15, 2020 U.S. Bankruptcy Court Order v. Catanzarite: Granting Motion to Sanction and Enforce Prelim. Injunction | 269 | 283 |
| May 8, 2020 Order to Show Cause why K. Catanzarite's Pro Hac Vice Status Should Not Be Revoked | 285 | 302 |
| March 9, 2022 U.S. Court of Appeals, Eleventh Circuit Order Upholding All Sanctions v. Catanzarite | 304 | 308 |
| State Bar Summary to Plaintiff via PRA: "The court stated Catanzarite's case was a "sham." | 312 | 312 |
| State Bar Summary to Plaintiff via PRA: "Catanzarite does not care about the truth making statements to the Court." | 312 | 312 |
| State Bar Summary to Plaintiff via PRA: "Catanzarite took the property to pay for his fees, but did not tell the [BK] Court." | 312 | 312 |
| Court Orders (Catanzarite's case was a sham; does not care about the truth; took the property in alleged BK fraud.) | 313 | 338 |
| FTC Guidance Under Federal Antitrust Laws; The State Bar of California is Unlawfully Protecting Catanzarite (15 U.S.C. § 1) | 340 | 352 |
| Plaintiff Exhausted State Remedies: State Bar Protects Catanzarite Despite Serial Fraud Known to Board of Trustees | 354 | 356 |
| State Bar's Davtyan Threatens Disabled Plaintiff After Grandt Inadvertently Reveals Internal Collusion to Aid Catanzarite | 358 | 358 |
| Plaintiff Exhausted State Remedies: State Won't Appear, and Still Refuses to Produce PRAs Showing Collusion | 360 | 362 |
| Plaintiff's Former Counsel Hears from Matthew Kinley About a Parallel Scheme of Catanzarite Similarly Patterned | 364 | 364 |
| State Bar Files Anti-SLAPP 5-Months Late to Avoid Plaintiff Deposition; Threatens Disabled Plaintiff w/Pro Se Legal Fees | 366 | 366 |
| Plaintiff Exhausted State Remedies: State Bar Lacks Active State Supervision per FTC Guidance, Antitrust Laws | 368 | 368 |

| | | |
|---|---|---|
| Plaintiff Exhausted State Remedies: State Bar is Responsible for Catanzarite, Refuses to Protect Disabled Plaintiff | 370 | 377 |
| Plaintiff Shows Prima Facie Case for 3X Counts Malicious Prosecution – Defendant Continues to Enable the Scheme | 381 | 422 |
| Catanzarite is Disqualified 4 Times, Including from Rep. of CTI Shareholders, Defendant Still Allows v. Disabled Plaintiff | 424 | 454 |