EXHIBIT 9

Beck v. Superior Court of California, County of Orange
ADA Complaint Exhibits 339

# FTC Staff Guidance on Active Supervision of State Regulatory Boards Controlled by Market Participants[*]

## I. Introduction

States craft regulatory policy through a variety of actors, including state legislatures, courts, agencies, and regulatory boards. While most regulatory actions taken by state actors will not implicate antitrust concerns, some will. Notably, states have created a large number of regulatory boards with the authority to determine who may engage in an occupation (*e.g.*, by issuing or withholding a license), and also to set the rules and regulations governing that occupation. Licensing, once limited to a few learned professions such as doctors and lawyers, is now required for over 800 occupations including (in some states) locksmiths, beekeepers, auctioneers, interior designers, fortune tellers, tour guides, and shampooers.[1]

In general, a state may avoid all conflict with the federal antitrust laws by creating regulatory boards that serve only in an advisory capacity, or by staffing a regulatory board exclusively with persons who have no financial interest in the occupation that is being regulated. However, across the United States, "licensing boards are largely dominated by active members of their respective industries . . ."[2] That is, doctors commonly regulate doctors, beekeepers commonly regulate beekeepers, and tour guides commonly regulate tour guides.

Earlier this year, the U.S. Supreme Court upheld the Federal Trade Commission's determination that the North Carolina State Board of Dental Examiners ("NC Board") violated the federal antitrust laws by preventing non-dentists from providing teeth whitening services in competition with the state's licensed dentists. *N.C. State Bd. of Dental Exam'rs v. FTC*, 135 S. Ct. 1101 (2015). NC Board is a state agency established under North Carolina law and charged with administering and enforcing a licensing system for dentists. A majority of the members of this state agency are themselves practicing dentists, and thus they have a private incentive to limit

---

[*] This document sets out the views of the Staff of the Bureau of Competition. The Federal Trade Commission is not bound by this Staff guidance and reserves the right to rescind it at a later date. In addition, FTC Staff reserves the right to reconsider the views expressed herein, and to modify, rescind, or revoke this Staff guidance if such action would be in the public interest.

[1] Aaron Edlin & Rebecca Haw, *Cartels By Another Name: Should Licensed Occupations Face Antitrust Scrutiny*, 162 U. PA. L. REV. 1093, 1096 (2014).

[2] *Id.* at 1095.

Complaint Supplement #30-2020-01145998 Back # Superior Court of California County of Orange
ADA Complaint Exhibits 340
Exhibit #9: 001

competition from non-dentist providers of teeth whitening services. NC Board argued that, because it is a state agency, it is exempt from liability under the federal antitrust laws. That is, the NC Board sought to invoke what is commonly referred to as the "state action exemption" or the "state action defense." The Supreme Court rejected this contention and affirmed the FTC's finding of antitrust liability.

In this decision, the Supreme Court clarified the applicability of the antitrust state action defense to state regulatory boards controlled by market participants:

> "The Court holds today that a state board on which a controlling number of decisionmakers are active market participants in the occupation the board regulates must satisfy *Midcal's* [*Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980)] active supervision requirement in order to invoke state-action antitrust immunity." *N.C. Dental*, 135 S. Ct. at 1114.

In the wake of this Supreme Court decision, state officials have requested advice from the Federal Trade Commission regarding antitrust compliance for state boards responsible for regulating occupations. This outline provides FTC Staff guidance on two questions. *First*, when does a state regulatory board require active supervision in order to invoke the state action defense? *Second*, what factors are relevant to determining whether the active supervision requirement is satisfied?

Our answers to these questions come with the following caveats.

> ➤ Vigorous competition among sellers in an open marketplace generally provides consumers with important benefits, including lower prices, higher quality services, greater access to services, and increased innovation. For this reason, a state legislature should empower a regulatory board to restrict competition only when necessary to protect against a credible risk of harm, such as health and safety risks to consumers. The Federal Trade Commission and its staff have frequently advocated that states avoid unneeded and burdensome regulation of service providers.[3]

> ➤ Federal antitrust law does <u>not</u> require that a state legislature provide for active supervision of any state regulatory board. A state legislature may, and generally should, prefer that a regulatory board be subject to the requirements of the federal antitrust

---

[3] *See, e.g.*, Fed. Trade Comm'n Staff Policy Paper, *Policy Perspectives: Competition and the Regulation of Advanced Practice Registered Nurses* (Mar. 2014), https://www.ftc.gov/system/files/documents/reports/policy-perspectives-competition-regulation-advanced-practice-nurses/140307aprnpolicypaper.pdf; Fed. Trade Comm'n & U.S. Dept. of Justice, Comment before the South Carolina Supreme Court Concerning Proposed Guidelines for Residential and Commercial Real Estate Closings (Apr. 2008), https://www.ftc.gov/news-events/press-releases/2008/04/ftcdoj-submit-letter-supreme-court-south-carolina-proposed.

October 2015

2

Complaint Supplement #30-2020-01145998 Superior Court of California County of Orange
Exhibit #9: 002   ADA Complaint Exhibits 341

laws. If the state legislature determines that a regulatory board should be subject to antitrust oversight, then the state legislature need not provide for active supervision.

➢ Antitrust analysis – including the applicability of the state action defense – is fact-specific and context-dependent. The purpose of this document is to identify certain overarching legal principles governing when and how a state may provide active supervision for a regulatory board. We are not suggesting a mandatory or one-size-fits-all approach to active supervision. Instead, we urge each state regulatory board to consult with the Office of the Attorney General for its state for customized advice on how best to comply with the antitrust laws.

➢ This FTC Staff guidance addresses only the active supervision prong of the state action defense. In order successfully to invoke the state action defense, a state regulatory board controlled by market participants must also satisfy the clear articulation prong, as described briefly in Section II. below.

➢ This document contains guidance developed by the staff of the Federal Trade Commission. Deviation from this guidance does not necessarily mean that the state action defense is inapplicable, or that a violation of the antitrust laws has occurred.

October 2015

3

Complaint Supplement #30-2020-01145998 Superior Court of California County of Orange
ADA Complaint Exhibits 342
Exhibit #9: 003

## II.     Overview of the Antitrust State Action Defense

"Federal antitrust law is a central safeguard for the Nation's free market structures .... The antitrust laws declare a considered and decisive prohibition by the Federal Government of cartels, price fixing, and other combinations or practices that undermine the free market." *N.C. Dental*, 135 S. Ct. at 1109.

Under principles of federalism, "the States possess a significant measure of sovereignty." *N.C. Dental*, 135 S. Ct. at 1110 (*quoting Community Communications Co. v. Boulder*, 455 U.S. 40, 53 (1982)). In enacting the antitrust laws, Congress did not intend to prevent the States from limiting competition in order to promote other goals that are valued by their citizens. Thus, the Supreme Court has concluded that the federal antitrust laws do not reach anticompetitive conduct engaged in by a State that is acting in its sovereign capacity. *Parker v. Brown*, 317 U.S. 341, 351-52 (1943). For example, a state legislature may "impose restrictions on occupations, confer exclusive or shared rights to dominate a market, or otherwise limit competition to achieve public objectives." *N.C. Dental*, 135 S. Ct. at 1109.

Are the actions of a state regulatory board, like the actions of a state legislature, exempt from the application of the federal antitrust laws? In *North Carolina State Board of Dental Examiners*, the Supreme Court reaffirmed that a state regulatory board is not the sovereign. Accordingly, a state regulatory board is not necessarily exempt from federal antitrust liability.

More specifically, the Court determined that "a state board on which a controlling number of decisionmakers are active market participants in the occupation the board regulates" may invoke the state action defense only when two requirements are satisfied: first, the challenged restraint must be clearly articulated and affirmatively expressed as state policy; and second, the policy must be actively supervised by a state official (or state agency) that is not a participant in the market that is being regulated. *N.C. Dental*, 135 S. Ct. at 1114.

> ➢ The Supreme Court addressed the clear articulation requirement most recently in *FTC v. Phoebe Putney Health Sys., Inc.*, 133 S. Ct. 1003 (2013). The clear articulation requirement is satisfied "where the displacement of competition [is] the inherent, logical, or ordinary result of the exercise of authority delegated by the state legislature. In that scenario, the State must have foreseen and implicitly endorsed the anticompetitive effects as consistent with its policy goals." *Id.* at 1013.

> ➢ The State's clear articulation of the intent to displace competition is not alone sufficient to trigger the state action exemption. The state legislature's clearly-articulated delegation of authority to a state regulatory board to displace competition may be "defined at so high a level of generality as to leave open critical questions about how

October 2015                                                                                                               4

and to what extent the market should be regulated." There is then a danger that this delegated discretion will be used by active market participants to pursue private interests in restraining trade, in lieu of implementing the State's policy goals. *N.C. Dental*, 135 S. Ct. at 1112.

➢ The active supervision requirement "seeks to avoid this harm by requiring the State to review and approve interstitial policies made by the entity claiming [antitrust] immunity." *Id.*

Where the state action defense does not apply, the actions of a state regulatory board controlled by active market participants may be subject to antitrust scrutiny. Antitrust issues may arise where an unsupervised board takes actions that restrict market entry or restrain rivalry. The following are some scenarios that have raised antitrust concerns:

➢ A regulatory board controlled by dentists excludes non-dentists from competing with dentists in the provision of teeth whitening services. *Cf. N.C. Dental*, 135 S. Ct. 1101.

➢ A regulatory board controlled by accountants determines that only a small and fixed number of new licenses to practice the profession shall be issued by the state each year. *Cf. Hoover v. Ronwin*, 466 U.S. 558 (1984).

➢ A regulatory board controlled by attorneys adopts a regulation (or a code of ethics) that prohibits attorney advertising, or that deters attorneys from engaging in price competition. *Cf. Bates v. State Bar of Ariz.*, 433 U.S. 350 (1977); *Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975).

October 2015

5

Complaint Supplement #30-2020-01145995 Beek v. Superior Court of California County of Orange
ADA Complaint Exhibits 344
Exhibit #9: 005

## III.  Scope of FTC Staff Guidance

   A. This Staff guidance addresses the applicability of the state action defense under the federal antitrust laws. Concluding that the state action defense is inapplicable does <u>not</u> mean that the conduct of the regulatory board necessarily violates the federal antitrust laws. A regulatory board may assert defenses ordinarily available to an antitrust defendant.

   1. **Reasonable restraints on competition do not violate the antitrust laws, even where the economic interests of a competitor have been injured.**

   **Example 1:** A regulatory board may prohibit members of the occupation from engaging in fraudulent business practices without raising antitrust concerns. A regulatory board also may prohibit members of the occupation from engaging in untruthful or deceptive advertising. *Cf. Cal. Dental Ass'n v. FTC*, 526 U.S. 756 (1999).

   **Example 2:** Suppose a market with several hundred licensed electricians. If a regulatory board suspends the license of one electrician for substandard work, such action likely does not unreasonably harm competition. *Cf. Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696 (4th Cir. 1991) (en banc).

   2. **The ministerial (non-discretionary) acts of a regulatory board engaged in good faith implementation of an anticompetitive statutory regime do not give rise to antitrust liability. See 324 Liquor Corp. v. Duffy, 479 U.S. 335, 344 n. 6 (1987).**

   **Example 3:** A state statute requires that an applicant for a chauffeur's license submit to the regulatory board, among other things, a copy of the applicant's diploma and a certified check for $500. An applicant fails to submit the required materials. If for this reason the regulatory board declines to issue a chauffeur's license to the applicant, such action would not be considered an unreasonable restraint. In the circumstances described, the denial of a license is a ministerial or non-discretionary act of the regulatory board.

   3. **In general, the initiation and prosecution of a lawsuit by a regulatory board does not give rise to antitrust liability unless it falls within the "sham exception." Professional Real Estate Investors v. Columbia Pictures Industries, 508 U.S. 49 (1993); California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972).**

   **Example 4:** A state statute authorizes the state's dental board to maintain an action in state court to enjoin an unlicensed person from practicing dentistry. The members of the dental board have a basis to believe that a particular individual is practicing dentistry but does not hold a valid license. If the dental board files a lawsuit against that individual, such action would not constitute a violation of the federal antitrust laws.

October 2015

6

Complaint Supplement #30-2020-01145998 Superior Court of California County of Orange
ADA Complaint Exhibits 345
Exhibit #9: 006

B. Below, FTC Staff describes when active supervision of a state regulatory board is required in order successfully to invoke the state action defense, and what factors are relevant to determining whether the active supervision requirement has been satisfied.

1. When is active state supervision of a state regulatory board required in order to invoke the state action defense?

**General Standard:** "[A] state board on which a controlling number of decisionmakers are active market participants in the occupation the board regulates must satisfy *Midcal*'s active supervision requirement in order to invoke state-action antitrust immunity." *N.C. Dental*, 135 S. Ct. at 1114.

**Active Market Participants:** A member of a state regulatory board will be considered to be an active market participant in the occupation the board regulates if such person (i) is licensed by the board or (ii) provides any service that is subject to the regulatory authority of the board.

> ➢ If a board member participates in any professional or occupational sub-specialty that is regulated by the board, then that board member is an active market participant for purposes of evaluating the active supervision requirement.

> ➢ It is no defense to antitrust scrutiny, therefore, that the board members themselves are not directly or personally affected by the challenged restraint. For example, even if the members of the NC Dental Board were orthodontists who do not perform teeth whitening services (as a matter of law or fact or tradition), their control of the dental board would nevertheless trigger the requirement for active state supervision. This is because these orthodontists are licensed by, and their services regulated by, the NC Dental Board.

> ➢ A person who temporarily suspends her active participation in an occupation for the purpose of serving on a state board that regulates her former (and intended future) occupation will be considered to be an active market participant.

**Method of Selection:** The method by which a person is selected to serve on a state regulatory board is not determinative of whether that person is an active market participant in the occupation that the board regulates. For example, a licensed dentist is deemed to be an active market participant regardless of whether the dentist (i) is appointed to the state dental board by the governor or (ii) is elected to the state dental board by the state's licensed dentists.

October 2015

7

Complaint Supplement #30 Book # Superior Court of California County of Orange
Exhibit #9: 007   30-2020-01145998   ADA Complaint Exhibits 346

### *A Controlling Number, Not Necessarily a Majority, of Actual Decisionmakers:*

> ➤ Active market participants need not constitute a numerical majority of the members of a state regulatory board in order to trigger the requirement of active supervision. A decision that is controlled, either as a matter of law, procedure, or fact, by active participants in the regulated market (*e.g.*, through veto power, tradition, or practice) must be actively supervised to be eligible for the state action defense.

> ➤ Whether a particular restraint has been imposed by a "controlling number of decisionmakers [who] are active market participants" is a fact-bound inquiry that must be made on a case-by-case basis. FTC Staff will evaluate a number of factors, including:

>> ✓ The structure of the regulatory board (including the number of board members who are/are not active market participants) and the rules governing the exercise of the board's authority.

>> ✓ Whether the board members who are active market participants have veto power over the board's regulatory decisions.

**Example 5:** The state board of electricians consists of four non-electrician members and three practicing electricians. Under state law, new regulations require the approval of five board members. Thus, no regulation may become effective without the assent of at least one electrician member of the board. In this scenario, the active market participants effectively have veto power over the board's regulatory authority. The active supervision requirement is therefore applicable.

>> ✓ The level of participation, engagement, and authority of the non-market participant members in the business of the board – generally and with regard to the particular restraint at issue.

>> ✓ Whether the participation, engagement, and authority of the non-market participant board members in the business of the board differs from that of board members who are active market participants – generally and with regard to the particular restraint at issue.

>> ✓ Whether the active market participants have in fact exercised, controlled, or usurped the decisionmaking power of the board.

**Example 6:** The state board of electricians consists of four non-electrician members and three practicing electricians. Under state law, new regulations require the approval of a majority of board members. When voting on proposed regulations, the non-electrician members routinely defer to the preferences of the electrician members. Minutes of

October 2015

8

Complaint Supplement #30 Book #: Superior Court of California County of Orange
Exhibit #9: 008    30-2020-01145998
                   ADA Complaint Exhibits 347

board meetings show that the non-electrician members generally are not informed or knowledgeable concerning board business – and that they were not well informed concerning the particular restraint at issue. In this scenario, FTC Staff may determine that the active market participants have exercised the decisionmaking power of the board, and that the active supervision requirement is applicable.

**Example 7.** The state board of electricians consists of four non-electrician members and three practicing electricians. Documents show that the electrician members frequently meet and discuss board business separately from the non-electrician members. On one such occasion, the electrician members arranged for the issuance by the board of written orders to six construction contractors, directing such individuals to cease and desist from providing certain services. The non-electrician members of the board were not aware of the issuance of these orders and did not approve the issuance of these orders. In this scenario, FTC Staff may determine that the active market participants have exercised the decisionmaking power of the board, and that the active supervision requirement is applicable.

### 2. What constitutes active supervision?

FTC Staff will be guided by the following principles:

➢ "[T]he purpose of the active supervision inquiry . . . is to determine whether the State has exercised sufficient independent judgment and control" such that the details of the regulatory scheme "have been established as a product of deliberate state intervention" and not simply by agreement among the members of the state board. "Much as in causation inquiries, the analysis asks whether the State has played a substantial role in determining the specifics of the economic policy." The State is not obliged to "[meet] some normative standard, such as efficiency, in its regulatory practices." *Ticor*, 504 U.S. at 634-35. "The question is not how well state regulation works but whether the anticompetitive scheme is the State's own." *Id.* at 635.

➢ It is necessary "to ensure the States accept political accountability for anticompetitive conduct they permit and control." *N.C. Dental*, 135 S. Ct. at 1111. *See also Ticor*, 504 U.S. at 636.

➢ "The Court has identified only a few constant requirements of active supervision: The supervisor must review the substance of the anticompetitive decision, not merely the procedures followed to produce it; the supervisor must have the power to veto or modify particular decisions to ensure they accord with state policy; and the 'mere potential for state supervision is not an adequate substitute for a decision by the State.' Further, the state supervisor may not itself be an active market participant." *N.C. Dental*, 135 S. Ct. at 1116–17 (citations omitted).

October 2015

9

> ➤ The active supervision must precede implementation of the allegedly anticompetitive restraint.

> ➤ "[T]he inquiry regarding active supervision is flexible and context-dependent." "[T]he adequacy of supervision . . . will depend on all the circumstances of a case." *N.C. Dental*, 135 S. Ct. at 1116–17. Accordingly, FTC Staff will evaluate each case in light of its own facts, and will apply the applicable case law and the principles embodied in this guidance reasonably and flexibly.

### 3. What factors are relevant to determining whether the active supervision requirement has been satisfied?

FTC Staff will consider the presence or absence of the following factors in determining whether the active supervision prong of the state action defense is satisfied.

> ➤ The supervisor has obtained the information necessary for a proper evaluation of the action recommended by the regulatory board. As applicable, the supervisor has ascertained relevant facts, collected data, conducted public hearings, invited and received public comments, investigated market conditions, conducted studies, and reviewed documentary evidence.

>> ✓ The information-gathering obligations of the supervisor depend in part upon the scope of inquiry previously conducted by the regulatory board. For example, if the regulatory board has conducted a suitable public hearing and collected the relevant information and data, then it may be unnecessary for the supervisor to repeat these tasks. Instead, the supervisor may utilize the materials assembled by the regulatory board.

> ➤ The supervisor has evaluated the substantive merits of the recommended action and assessed whether the recommended action comports with the standards established by the state legislature.

> ➤ The supervisor has issued a written decision approving, modifying, or disapproving the recommended action, and explaining the reasons and rationale for such decision.

>> ✓ A written decision serves an evidentiary function, demonstrating that the supervisor has undertaken the required meaningful review of the merits of the state board's action.

>> ✓ A written decision is also a means by which the State accepts political accountability for the restraint being authorized.

October 2015

10

Complaint Supplement #30-2020-01145998 Superior Court of California County of Orange
Exhibit #9: 010   ADA Complaint Exhibits 349

**Scenario 1: Example of satisfactory active supervision of a state board regulation designating teeth whitening as a service that may be provided only by a licensed dentist, where state policy is to protect the health and welfare of citizens and to promote competition.**

➤ The state legislature designated an executive agency to review regulations recommended by the state regulatory board. Recommended regulations become effective only following the approval of the agency.

➤ The agency provided notice of (i) the recommended regulation and (ii) an opportunity to be heard, to dentists, to non-dentist providers of teeth whitening, to the public (in a newspaper of general circulation in the affected areas), and to other interested and affected persons, including persons that have previously identified themselves to the agency as interested in, or affected by, dentist scope of practice issues.

➤ The agency took the steps necessary for a proper evaluation of the recommended regulation. The agency:

✓ Obtained the recommendation of the state regulatory board and supporting materials, including the identity of any interested parties and the full evidentiary record compiled by the regulatory board.

✓ Solicited and accepted written submissions from sources other than the regulatory board.

✓ Obtained published studies addressing (i) the health and safety risks relating to teeth whitening and (ii) the training, skill, knowledge, and equipment reasonably required in order to safely and responsibly provide teeth whitening services (if not contained in submission from the regulatory board).

✓ Obtained information concerning the historic and current cost, price, and availability of teeth whitening services from dentists and non-dentists (if not contained in submission from the regulatory board). Such information was verified (or audited) by the Agency as appropriate.

✓ Held public hearing(s) that included testimony from interested persons (including dentists and non-dentists). The public hearing provided the agency with an opportunity (i) to hear from and to question providers, affected customers, and experts and (ii) to supplement the evidentiary record compiled by the state board. (As noted above, if the state regulatory board has previously conducted a suitable public hearing, then it may be unnecessary for the supervising agency to repeat this procedure.)

➤ The agency assessed all of the information to determine whether the recommended regulation comports with the State's goal to protect the health and

welfare of citizens and to promote competition.

➢ The agency issued a written decision accepting, rejecting, or modifying the scope of practice regulation recommended by the state regulatory board, and explaining the rationale for the agency's action.

### Scenario 2: Example of satisfactory active supervision of a state regulatory board administering a disciplinary process.

A common function of state regulatory boards is to administer a disciplinary process for members of a regulated occupation. For example, the state regulatory board may adjudicate whether a licensee has violated standards of ethics, competency, conduct, or performance established by the state legislature.

Suppose that, acting in its adjudicatory capacity, a regulatory board controlled by active market participants determines that a licensee has violated a lawful and valid standard of ethics, competency, conduct, or performance, and for this reason, the regulatory board proposes that the licensee's license to practice in the state be revoked or suspended. In order to invoke the state action defense, the regulatory board would need to show both clear articulation and active supervision.

➢ In this context, active supervision may be provided by the administrator who oversees the regulatory board (*e.g.*, the secretary of health), the state attorney general, or another state official who is not an active market participant. The active supervision requirement of the state action defense will be satisfied if the supervisor: (i) reviews the evidentiary record created by the regulatory board; (ii) supplements this evidentiary record if and as appropriate; (iii) undertakes a de novo review of the substantive merits of the proposed disciplinary action, assessing whether the proposed disciplinary action comports with the policies and standards established by the state legislature; and (iv) issues a written decision that approves, modifies, or disapproves the disciplinary action proposed by the regulatory board.

Note that a disciplinary action taken by a regulatory board affecting a single licensee will typically have only a de minimis effect on competition. A pattern or program of disciplinary actions by a regulatory board affecting multiple licensees may have a substantial effect on competition.

October 2015

12

**The following do not constitute active supervision of a state regulatory board that is controlled by active market participants:**

➢ The entity responsible for supervising the regulatory board is itself controlled by active market participants in the occupation that the board regulates. *See N.C. Dental*, 135 S. Ct. at 1113-14.

➢ A state official monitors the actions of the regulatory board and participates in deliberations, but lacks the authority to disapprove anticompetitive acts that fail to accord with state policy. *See Patrick v. Burget*, 486 U.S. 94, 101 (1988).

➢ A state official (*e.g.*, the secretary of health) serves ex officio as a member of the regulatory board with full voting rights. However, this state official is one of several members of the regulatory board and lacks the authority to disapprove anticompetitive acts that fail to accord with state policy.

➢ The state attorney general or another state official provides advice to the regulatory board on an ongoing basis.

➢ An independent state agency is staffed, funded, and empowered by law to evaluate, and then to veto or modify, particular recommendations of the regulatory board. However, in practice such recommendations are subject to only cursory review by the independent state agency. The independent state agency perfunctorily approves the recommendations of the regulatory board. *See Ticor*, 504 U.S. at 638.

➢ An independent state agency reviews the actions of the regulatory board and approves all actions that comply with the procedural requirements of the state administrative procedure act, without undertaking a substantive review of the actions of the regulatory board. *See Patrick*, 486 U.S. at 104-05.

October 2015

13

Complaint Supplement #30-2020-01145908 Beck v. Superior Court of California County of Orange
ADA Complaint Exhibits 352
Exhibit #9: 013