EXHIBIT 11

# O'HAGAN MEYER

ATTORNEYS & ADVISORS

VIA EMAIL:

Kenneth J. Catanzarite, Esq.        kcatanzarite@catanzarite.com
Catanzarite Law Corporation
2331 W Lincoln Avenue
Anaheim, California 92801

Mr. Catanzarite:

We are in receipt of your letter and the attempted "consents" pertaining to Cultivation Technologies, Inc. ("CTI") from Friday, January 25, 2019 ("Letter") and the subsequent complaint ("New Lawsuit") in which you purport that a majority of former officers and directors ("Controlling Parties") of both CTI and Mobile Farming Systems, Inc. ("MFS") have agreed to void their previous actions conducted in their capacities as officers and directors from the period March 30, 2015 to January 25, 2019, and "renounce" their shares in CTI for which CTI received good and valuable consideration and subsequently issued stock certificates through CTI's transfer agent of record.

To summarize the two complaints filed by the Catanzarite Law Corporation, the relevant facts are as follows:

- In March 2015, the boards of MFS and CTI were both comprised of O'Connor, Cooper, and Probst at the time of CTI's formation. O'Connor, Cooper, and Probst authorized all corporate actions of MFS and CTI in 2015 on behalf of each company;

- CTI has operated since 2015 and continues to do so. MFS shareholders account for more than 50 shareholders of CTI shareholders, who purchased shares in CTI for consideration of $.01 per share;

- Ms. Pinkerton, on behalf of Mr. Root, sued O'Connor, Cooper, and Probst for abuse of the elderly and payment of illegal commissions in violation of section 15(b) of the Securities Exchange Act of 1934;

- CTI began operating in June 2015 under the direction of O'Connor, Cooper, and Probst, who, with full knowledge by MFS shareholders restructured the plan to make CTI a wholly owned subsidiary and offered CTI shares to MFS shareholders based upon their MFS positions at $.01 a share;

- Shareholders who have executed the MFS consents sent by your law firm are, in fact, bona fide shareholders of CTI, have acted on behalf of the company in voting in many instances, and have signed agreements with the company for their shares;

4695 MacArthur Court | Suite 210 | Newport Beach, CA 92660 | www.ohaganmeyer.com
Chicago • Richmond, VA • Los Angeles • Woodland Hills, CA • Washington D.C. • Boston • Philadelphia • Wilmington, DE • Alexandria, VA

Beck v. Superior Court of California, County of Orange
Beck Declaration ISO Protective Order
ADA Complaint Exhibits 103
Exhibit #11: 001

Ken Catanzarite
February 5, 2019
PAGE - 2 –

- In January 2019, your firm filed a new legal Complaint, in which O'Connor and Cooper, in signing the "consents," attempt to "renounce" their shares and "undo" all activities of CTI from the period of 2015 to 2019 in favor of MFS;

- The New Lawsuit suggests that MFS should benefit from all good and valuable consideration furnished by every party subsequent to June 2015, which includes, but is not limited to:

    - $932,119 in 506(b) private placement shares sold by CTI in subscription agreements executed by O'Connor, which also represent the cap table of CTI (without any shares owned by MFS);

    - $527,000 in 506(c) private placement shares sold by CTI through subscription agreements, many of which are executed by O'Connor, which also represent the cap table of CTI (without any shares owned by MFS);

    - $1,645,000 in convertible notes; and

    - $5,959,251 provided by FinCanna Capital Corp. pursuant to multiple agreements executed between CTI and FinCanna

This letter serves as formal notice ("Notice") to Catanzarite Law Corporation and others listed above of the potential damages inflicted against CTI and its shareholders caused by the Letter, New Lawsuit and the "consents" and attempted "renouncements" as set forth above ("Direct Damages"), which includes the very same shareholders that you are either representing or soliciting for signature.

The following transactions are in process ("Transactions"), all of which are now at imminent, material risk of failing due to your actions along with other shareholders who executed the shareholder consents.

CTI is preparing disclosure documents related to the parties of these agreements so that they are not consummated without full disclosure of the additional risks now attributed by your capricious actions.

- <u>FinCanna Letter of Agreement</u>. Necessitates a payment of no less than $3,000,000 to FinCanna on or before March 31, 2019, after which FinCanna may elect to force dissolution pursuant to their General Security Agreement.

- <u>Sale of the Coachella Property for $4,000,000</u>. The proceeds from this sale go to FinCanna to reduce more than $8,000,000 in outstanding payment obligations with FinCanna. This transaction was approved by CTI shareholders in November 2018 and is presently in escrow, with a closing date slated for February 2019. This property and any proceeds are subject to a blanket security agreement with FinCanna.

Ken Catanzarite
February 5, 2019
PAGE - 3 –

- <u>Sale of the Colusa Property for $300,000</u>. A majority of the proceeds from this sale go to FinCanna to reduce more than $8,000,000 in outstanding payment obligations outstanding with FinCanna. This property and any proceeds are subject to a blanket security agreement with FinCanna.

- <u>Sale – Leaseback of Palm Desert Property for $1,575,000</u>. If CTI is unable to transition its manufacturing operations from Coachella to Palm Desert before June 30, 2019 – the company will be unable to operate or sustain itself beyond that date. CTI is in escrow pursuant to a build-to-suit, sale-leaseback which affords CTI an opportunity to transition commercial operations from Coachella to Palm Desert, but the timing is absolutely critical. This property and any proceeds are subject to a blanket security agreement with FinCanna.

- <u>Reverse Takeover Transaction with Public Issuer in Canada ("RTO")</u>. CTI has been working on a transaction which may afford liquidity to CTI shareholders, but it requires significant effort and necessitates cooperation and satisfaction of numerous conditions precedent. We have attached a valuation summary detailing other public issuers in the cannabis industry which was prepared by DelMorgan & Co. of Santa Monica, California from October 2018. Note that, according to this information provided to CTI by DelMorgan & Co., comparison companies with $3M in revenue resulting from the "LTM" or last twelve months imputes a potential valuation range of $175,000,000 to $261,000,000 for CTI.

**CTI makes no warranties nor representations of its ability to close the foregoing transactions, to provide shareholder liquidity, or to achieve any valuation as a company overall should it finalize the RTO. This information is provided for reference in assessing potential of the Direct Damages inflicted by you and others.**

You have demanded in the Letter that CTI relinquish immediate control to certain parties, which CTI categorically contests as illegal.

The direct damages outlined herein are mounting. If you continue with your two lawsuits, you and those in conspiracy with you may be held responsible for all resulting damage. If you would like to have your position reviewed by a neutral party, I suggest we engage in mediation so that all your complaints pertaining to CTI and its directors be addressed immediately.

Ken Catanzarite
February 5, 2019
PAGE - 4 –

If you reject this good faith request to mediate this dispute this month, we will assume that you and all parties involved in the Letter are engaged in an active conspiracy to destroy CTI. Please be reminded that FinCanna, copied hereto, may exercise its right to exert control over the company and commence liquidation of CTI if we do not meet the March 31, 2019 payment deadline.

Let's discuss next steps after the ex parte hearing tomorrow.

Sincerely,

Sam Y. Edgerton, III