1   Justin S. Beck
    3501 Roselle St.
2   Oceanside, California 92056
    760-449-2509
3   justintimesd@gmail.com
    *In Pro Per*
4

**FILED**

**SEP 2 7 2023**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

5           **IN THE UNITED STATES DISTRICT COURT**

6                          **FOR THE**

7              **SOUTHERN DISTRICT OF CALIFORNIA**

8

9   JUSTIN S. BECK,                      )  Case No: 23-CV-0882-AGS-DDL
                                         )
10              Plaintiff,               )  Judge Assigned: Hon. Andrew G. Schopler
                                         )
11        v.                             )  **FIRST AMENDED COMPLAINT FOR**
                                         )  **DAMAGES & INJUNCTIVE RELIEF**
12  SUPERIOR COURT OF CALIFORNIA,        )
    COUNTY OF ORANGE,                    )  **JURY DEMAND**
13                                       )
                Defendant                )     1. **DENIAL OF ACCESS**
14                                       )
                                         )     2. **FAILURE TO ACCOMMODATE**
15  _____ )
                                            3. **UNRUH CIVIL RIGHTS VIOLATION**
16
                                            4. **FAILED POLICY (MONELL)**
17
                                            5. **CONSPIRACY AGAINST RIGHTS**
18

19

20

21

22

23

24

25

26

27

28

---

FIRST AMENDED COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF       23-CV-0882-AGS-DDL

i

1  **INTRODUCTION**.................................................................................................1

2  **JURISDICTION AND VENUE**.........................................................................1

3  **PARTY IDENTIFICATION**...............................................................................1

4  **GENERAL BACKGROUND & OVERVIEW**.....................................................2

5       Orange County, California is a cesspool for public corruption.

6  **BACKGROUND ON STATE BAR'S CORRUPT CONTROL OF DEFENDANT**.......................3

7       State Bar's bribery schemes and its Judicial Nominees Evaluation (JNE) committee.

8  **BACKGROUND ON STATE BAR'S FRAUDULENT SCHEME**...........................4

9       State Bar and Orange County's Catanzarite target Justin without probable cause.

10  **CHARGING ALLEGATIONS SHOWING A CONSPIRACY TO VIOLATE CIVIL RIGHTS**..6

11       State Bar uses JNE to pack the 4th District, Division 3 then defrauds California Supreme Court.

12  **CHARGING ALLEGATIONS AGAINST DEFENDANT FOR ADA RIGHTS VIOLATIONS**..7

13       Defendant staff, under State Bar's control, obstructs Justin's case and denies him due process.

14  **CAUSES OF ACTION**...........................................................................................12

15       **COUNT I – DENIAL OF ACCESS – 42 U.S.C. § 12131, et seq**.....................12

16       **COUNT II – FAILURE TO ACCOMMODATE – 42 U.S.C. § 12131, et seq.** ..................14

17       **COUNT III – UNRUH CIVIL RIGHTS ACT – CAL. CIV. CODE § 51(f)**.......................15

18       **COUNT IV – FAILED POLICY – 42 U.S.C. § 1983**...................................17

19       **COUNT V – CONSPIRACY AGAINST RIGHTS – 18 U.S.C. § 241**...................................18

20  **JURY DEMAND**...................................................................................................21

21  **PRAYER FOR RELIEF**......................................................................................21

22

23

24

25

26

27

28

---

Plaintiff Justin S. Beck ("Plaintiff" or "Justin") for his first amended complaint against Defendant Superior Court of California, County of Orange ("Defendant" or "OCSC") alleges as follows:

## INTRODUCTION

1.  Justin is a San Diego, California entrepreneur whose career was on the rise as a CEO. Justin's career and life were destroyed by a criminal conspiracy to deprive him of federal rights among employees of Superior Court of California, County of Orange ("Defendant"), The State Bar of California ("State Bar"), and attorney Kenneth Catanzarite ("Catanzarite") of Anaheim, California.

2.  As a direct and proximate cause of Defendant and State Bar's scheme, Justin is now indigent, disabled, and has suffered in ways no person in a civilized society would deem acceptable.

3.  Justin seeks damages for overt obstruction of Government Claims Act litigation, due process violations, denial of access to Defendant services, refusal to accommodate Justin's special needs as a qualified individual, failed ADA policies of Defendant, with damages, restitution, and prophylactic relief for criminal conspiracy against federal rights, including due process and the ADA.

## JURISDICTION & VENUE

4.  Plaintiff brings this action under Americans with Disabilities Act, Title II, 42 U.S.C. § 12131, *et seq*. ("ADA"), Deprivation of Civil Rights, 42 U.S.C. § 1983, Unruh Civil Rights Act, Cal. Civ. Code. § 51(f) ("Unruh"), and 18 U.S.C. § 241 for conspiracy against federal rights.

5.  This Court has jurisdiction pursuant to the following statutes:

  a.  28 U.S.C. § 1331 for claims arising under the U.S. Constitution and U.S. laws.

  b.  28 U.S.C. § 1367 for state law claims.

6.  Venue is proper in this judicial district pursuant to the following statutes:

  a.  28 U.S.C. § 1391(b)(2) because the events generally transpired in this district.

## PARTY IDENTIFICATION

7.  Plaintiff JUSTIN S. BECK ("Plaintiff" or "Justin") is an individual person residing in Oceanside, California, who was damaged through obstruction and denial of due process of law through violation of ADA, Unruh, failed Defendant policy, and a criminal conspiracy to violate rights.

8.  Defendant SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE ("Defendant" or OCSC") is a public entity subject to ADA and denial of Plaintiff's claim form (December 22, 2022).

**GENERAL BACKGROUND & OVERVIEW**

9.      Orange County, California has become a cesspool of public corruption. As CEO of an Irvine, CA company – Justin was in the wrong place at the wrong time. He got stuck in converging scandals involving State Bar, Defendant, local law enforcement, and a corrupt law firm in cahoots with State Bar.

10.     Justin has been subject to a five-year, fraudulent scheme carried out by that law firm, Catanzarite Law Corporation, led by Catanzarite and State Bar. When it became clear Catanzarite was working together with State Bar to defraud him, Justin filed suit under Government Claims Act against State Bar.

11.     State Bar is accustomed to stopping any threat against it by retaliating against attorneys who expose it. State Bar uses control of "State Bar Court" to delay public rights, conceal theft, and carry out corrupt motives of public and private actors (i.e., disciplining attorneys who expose it in any way).

12.     Justin is not an attorney, so he is not subject to State Bar's misuse of "State Bar Court." If Justin was, he would be subject to a typical collateral attack where State Bar would concoct and file retaliatory disciplinary charges, possibly even enlist a DA to bring cooked up allegations to silence him.

13.     Because State Bar cannot control Justin as an attorney, it turned to its corrupt control of Defendant, clerks, and Honorable John C. Gastelum to obstruct claims and due process. As insurance, it used its other corrupt functions to pack the 4th District, Division 3 Court of Appeal to obstruct review.

14.     These allegations may seem fanciful, but the capacity for this sort of conduct is generally known in California's legal community and even more so by its victims. At one point, California Supreme Court even had to direct State Bar to stop using collateral attacks to deprive attorneys of due process.

15.     Circumstantial evidence supporting the corrupt infrastructure to carry out the scheme against Justin is overwhelming. For instance, one of Defendant's clerks pled guilty to RICO conspiracy March 28, 2017, involved in a multi-year scheme to fix over 1,034 Defendant cases in exchange of bribes.

16.     October 13, 2022, U.S. Department of Justice announced civil rights violations by Orange County District Attorney's Office ("OCDA") and Sheriff's Department in the use of a widespread jailhouse informant program. (OCDA told Justin it did not handle racketeering allegations.)

17.     In Anaheim where Catanzarite is based, independent investigators put together a scathing report alleging pay to play conspiracies, misconduct, misuse of COVID dollars, and FBI affidavits alleging even more scams and conspiracies in City Hall. None are greater in scope than State Bar's corruption.

**BACKGROUND ON STATE BAR'S CORRUPT CONTROL OF DEFENDANT**

18.     State Bar's release of two heavily redacted reports on March 10, 2023, "reveal systemic organizational dysfunction that persisted for many years and through many changes of leadership." This dysfunction persists today, as evidenced by the schemes targeting Justin through Defendant.

19.     State Bar is California's official attorney licensing agency. It is responsible for managing the admission of lawyers to the practice of law, purporting to investigate complaints of professional misconduct, purporting to prescribe appropriate discipline, accepting attorney-member fees, advancing the careers of judicial officers (i.e., from trial courts to Courts of Appeal), and financially accepting then distributing sums paid through attorney trust accounts to pay other attorney-members.

20.     Corruption and bribery are not State Bar's only problems. According to an "Investigator in the OCTC [Office of Chief Trial Counsel]" on December 22, 2019, the "idea is NOT to investigate attorney misconduct but to draft memo after memo in an effort to make it look as if there had actually been an investigation...OCTC is for all intents a [*sic*] purposes a fraudulent enterprise."

21.     Through these alleged instances of mail fraud by State Bar to protect attorneys, Girardi and Catanzarite avoided scrutiny for decades. Unsuspecting members of the public were targeted by fake memorandums from OCTC under the guise of sovereignty. The public put their faith and belief in California, only to have their money and property corruptly converted to State Bar's private interests.

22.     State Bar controls more than its attorneys. Through its "Commission on Judicial Nominees Evaluation" (JNE) it recommends judges for advancement, corruptly controlling careers. JNE is exclusively appointed by Board of Trustees. JNE completes State Bar monopoly of California's Courts.

23.     In 2015, U.S. Supreme Court determined State Bar is not the State because it is controlled by lawyers for the benefit of lawyers. In 2019, State Bar became subject to Government Claims Act. Justin alleges to be the first to file Government Claims Act and antitrust litigation against State Bar, leading to a criminal conspiracy intended to suppress evidence, conceal liability, and violate his federal rights.

24.     Where Justin's other cases focus on alleged racketeering and antitrust violations, this case exposes State Bar's corrupt control of Defendant. As State Bar was purporting to "reform," even as it admitted to its own corruption, its Board of Trustees and Office of General Counsel were busy obstructing Justin's Government Claims Act litigation while concealing it from auditors and Legislature.

---

## BACKGROUND ON STATE BAR'S FRAUDULENT SCHEME

25.    By September 2018 Justin was CEO and the second largest shareholder of an Irvine, California company (Cultivation Technologies, Inc., or "CTI"). By January 2019, CTI was preparing to complete a $261 million merger with a public company, Western Troy Capital Resources, Inc. ("Troy").

26.    Through no fault of his own, Justin and CTI became a target of an alleged criminal enterprise in Anaheim, California, Catanzarite Law Corporation (part of The State Bar of California enterprise), led by Kenneth J. Catanzarite ("Catanzarite").

27.    Catanzarite's favorite scheme involves using strawman plaintiffs, engaging in non-judicial acts of fraud, extortion, wire fraud, mail fraud, bank fraud, and subornation of perjury to build fake "cases." Without regard of facts or evidence, Catanzarite then files sham court documents to pursue his own financial interests under the guise of State Bar privilege or protected activity. He has done so for decades.

28.    Without objective probable cause, three fraudulent "cases" were maliciously filed by Catanzarite against Justin to steal CTI. Each terminated favorably reflecting lack of merits by March 5, 2020. Justin filed suit through counsel for malicious prosecution, styled *Justin S. Beck v. Kenneth Catanzarite, et al.* in Superior Court of California, County of Orange. (Case No. 30-2020-01145998) ("CX105 Case").

29.    When Catanzarite failed to steal CTI from its shareholders, he destroyed it instead seeking to cover up the damages and his overt acts of deliberate fraud. After that, Catanzarite obtained help from his partners at the State Bar to help cover up his mess and protect him (just like Girardi did for decades).

30.    Catanzarite prefers Superior Court of California, County of Orange ("Defendant") to pursue fraudulent claims. Akin to Girardi in LA, Catanzarite's staff have allegedly bought relationships within Orange County District Attorney's Office, Anaheim Police Department, and among court staff including judges, allowing him to do virtually whatever he wants to whomever he wants through Defendant.

31.    To avoid scrutiny from his partner and agency, State Bar, Catanzarite allegedly pays them off for protection (currently, Eli David Morgenstern, Senior Trial Counsel). On March 10, 2023, State Bar publicly admitted that it was compromised by corruption and bribery of its employees.

32.    While Catanzarite was pursuing fraudulent schemes against CTI and Justin, Justin sought protection from State Bar starting in November 2019. At that time, Justin was unaware State Bar staff could not be trusted, and that they were instrumental in attorney schemes to defraud the public.

---

FIRST AMENDED COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF      23-CV-0882-AGS-DDL

33.    After CTI and its public merger with Troy was destroyed in 2019, Justin started a healthcare technology company commencing in September 2020 called Contakt World Technologies Corp. ("CW") and became CEO.

34.    CW raised $3 million, was valued at $30 million, and achieved awards including honorable mention as a "World Changing Idea" by Fortune Magazine. With CW, Justin also hosted and co-produced a podcast with iHeartMedia that was among the top-30 in the country in 2020, which led to an offer to Justin to work with A-List celebrity Will Ferrell on a new podcast Justin would host/co-produce.

35.    CW was destroyed indirectly by State Bar and Catanzarite schemes through Defendant in 2021.

36.    When it became clear State Bar was working with Catanzarite to engage in fraudulent schemes, Justin found a Government Claims Act form on The State Bar of California's website and sent it together with a preservation of evidence letter October 14, 2021. His claim was denied November 12, 2021.

37.    Alleging negligence, fraud, corruption, and bribery among State Bar, Catanzarite, and State Bar staff, Justin filed Government Claims Act suit on December 21, 2021, in Superior Court of California, County of Orange[1] styled *Justin S. Beck v. The State Bar of California, et al.* (Case No. 30-2021-01237499) ("C11 Case"). Justin believes this was the first Government Claims Act case against State Bar after it became expressly subject to liability under new laws taking effect January 1, 2019.[2]

38.    After filing C11 Case, Justin filed an *ex parte* application showing irreparable harm, supported by court orders reflecting Catanzarite's fraudulent schemes. State Bar allegedly directed Defendant to appoint a new judicial officer State Bar could control to conceal and obstruct Justin's case in conspiracy.

39.    With Honorable Richard Lee recusing and Honorable Gastelum assuming control of C11 Case at State Bar's *ex parte* direction January 18, 2022, State Bar and Defendant's staff engaged in a conspiracy to violate Justin's clearly established civil rights. Between January 18, 2022, and May 25, 2022, State Bar coordinated with Catanzarite and agreed on a materially false set of facts that were inconsistent with trial court and Court of Appeal decisions which clearly established Catanzarite's scheme to defraud members of the public with Defendant. The conspiracy was in full motion.

---

[1] Plaintiff obtained permission to sue Defendant under Government Claims Act on December 22, 2022, discretely of ADA.

[2] Cal. Bus. & Prof. Cod. § 6094(a) became effective January 1, 2019. State Bar is subject to Gov. Cod. § 810, et. seq.

**CHARGING ALLEGATIONS SHOWING A CONSPIRACY TO VIOLATE CIVIL RIGHTS**

40.    November 10, 2021, two days before Justin's State Bar claims form was denied, Governor Newsom nominated Maurice Sanchez to serve as an Associate Justice of the 4th District, Division 3 Court of Appeal. This was allegedly based on State Bar's direction of JNE to obstruct C11 Case.

41.    Justin had communicated by text with Attorney General Rob Bonta about State Bar and Catanzarite's scheme since June 5, 2021. Justin eventually named former DOE State of California ("State") in C11 Case on May 2, 2022, through amended complaint and summons, alleging State's role.

42.    Also, on May 2, 2022 (after State was named), Governor Newsom nominated Justice Joanne Motoike to the 4th District, Division 3 Court of Appeal. This was allegedly based on State Bar's direction of JNE to obstruct C11 Case, forming a pattern and conspiracy when viewed objectively.

43    Between May 19, 2022, and May 25, 2022, State Bar's Chairman Ruben Duran, Executive Director Leah Wilson, Chief Trial Counsel George Cardona, and Assistant General Counsel Carissa Andresen communicated by email about the fraudulent scheme against Justin within Defendant's walls.

44.    May 31 , 2022, Justin was asked by State Bar's Office of General Counsel for an extension to produce discovery in C11 Case (no objections were served) After tricking him, State Bar deliberately refused to perform its obligations recognizing it could control Defendant and oppress Justin.

45.    July 20, 2022, Justin received a letter from State Bar's Suzanne Grandt and Duran, who refused to publicly disclose information State Bar possessed about six different fraudulent schemes involving State Bar and Catanzarite on the malicious basis that Justin was suing State Bar and pursuing discovery.

46    Justin amended C11 Case with former DOES, Duran and Grandt and served State Bar with a deposition subpoena to appear at its own address on September 9, 2022. State Bar responded by filing an "Anti-SLAPP" motion that was procedurally defective, 25- days late, to further oppress Justin.

47.    Justin amended CX105 Case with former DOES, State, State Bar, Duran, Grandt, and Morgenstern on August 8, 2022. Governor Newsom nominated Thomas A. Delaney to the 4th District, Division 3 Court of Appeal the same day, also allegedly directed by State Bar through JNE to obstruct.

48.    Justin learned of federal antitrust laws applied to the State Bar that were being violated through Defendant. He petitioned California Supreme Court on September 21, 2022, to intervene with the unlawful scheme and obstruction of his cases against State Bar, Duran, Morgenstern, Grandt, and others.

49. Justin filed the antitrust petition in California Supreme Court, accepted with four volumes of evidentiary exhibits, citing the anticompetitive conduct of State Bar with Defendant. Former Chief Justice Cantil Sakauye struck it as "premature" on September 27, 2022, with a rubber stamp signature.

50. State Bar was then assigned to make a federal antitrust determination for itself, despite Justin's allegations of anticompetitive behavior centering on State Bar, its Office of General Counsel, and its Board of Trustees acting to obstruct Justin's cases and other violations of federal antitrust laws.

51. Knowing they could rely on control of Defendant, State Bar, Duran, Grandt, and Morgenstern had filed knowingly false statements of fact and law, *in C11 case* relied on by the Court on October 11, 2022. Specifically, Grandt (as counsel for each) said they could not be sued for any reason in any capacity.

52. A sustained demurrer without leave to amend entered in C11 Case for State Bar as if Justin could not possibly state a claim against it, which Honorable Gastelum knew was not true since State Bar is not sovereign per U.S. Supreme Court, and because Justin had a right to sue under Government Claims Act.

53. The same day, Thomas A. Delaney was confirmed by unanimous vote of the Commission on Judicial Appointments (October 11, 2022), whose three members included Attorney General Rob Bonta and former Chief Justice Cantil Sakauye – both factually aware of the conspiracy targeting Justin.

54. Justin's actual Supreme Court petition (S276517) was then willfully obstructed by Office of General Counsel where Grandt works. All evidence was removed, then Grandt's co-conspirator Robert Retana furnished an October 17, 2022, legal opinion concluding State Bar was "immune from federal antitrust laws," which he knew was materially false but didn't care. Justin was legally entitled 60-days to challenge State Bar's frivolous October 17, 2022, determination. He was not given even two days.

55. After obstruction of his actual petition, Jorge Navarette, acting at the alleged direction of Duran, Grandt, or Retana of State Bar in conspiracy, filed a fraudulent antitrust petition in California Supreme Court (S276589) on Justin's behalf October 18, 2022, leading to a purported decision November 30, 2022, on a case Justin did not even file much less know about. This fraudulent Court order was signed by former Chief Justice Cantil Sakauye on November 30, 2022, with another rubber stamp.

56. December 12, 2022, Grandt with State Bar's Office of General Counsel inadvertently forwarded proof of Duran, Andresen, Morgenstern, and State Bar's materially false statements filed in C11 Case upon which Honorable Gastelum relied, then sought to intimidate Justin to destroy the evidence.

---

57.     When Justin refused to destroy it citing the crime fraud exception, on December 15, 2022, State Bar's General Counsel Ellin Davtyan doubled down, demanding a list of all persons to whom Justin had delivered the evidence of Duran, Andresen, Morgenstern, and State Bar's fraudulent statements in C11.

58.     Justin filed a public records request on December 8, 2022, seeking details on disclosures made to California Department of Justice, which manages tort claims and defense for State. Justin wanted to know why State refused to appear in C11 Case or CX105 Case despite service (State had defaulted).

59.     More than 10-days elapsed, and California Department of Justice refused to respond to the public records request about State's refusal to appear. After further inquiry by Justin, AG Rob Bonta sent Justin a letter on December 27, 2022, that the public records would be produced on January 3, 2023.

60.     Recognizing State Bar had packed the 4th District, Division 3 Court of Appeal to obstruct C11 Case and CX105 Case through its corrupt direction of JNE in making recommendations to Governor Newsom, Justin notified 4th District Court of Appeal's Chief Executive Officer and Clerk Kevin Lane by email on December 30, 2022, that Lane was a federal witness to these overt acts and conspiracy.

61.     On January 3, 2023, a few days after Justin's notice, Kevin Lane announced his retirement as Chief Executive Officer of the 4th District Court of Appeal after serving 10 years in that capacity. The same day, Deputy Attorney General Charles Tsai transferred from State DOJ to State Bar's Office of General Counsel to defend 3 22-cv-0161 AG SD DL and 3 23- cv-0164 AG SD DL in this Court.

62.     Despite promising production on January 3, 2023, State DOJ never produced the public records to Justin, which centered on State's refusal to appear in C11 Case and Justin's right to default judgment.

63.     Tsai allegedly intended to obstruct the federal cases in this Court, just like State Bar obstructed C11 Case through Office of General Counsel where State refused to appear, and Governor Newsom packed the 4th District, Division 3 at the allegedly corrupt direction of State Bar and its JNE division.

64.     Recognizing State Bar's corrupt control over Defendant, Justin sought removal of C11 Case to U.S. Central District of California, Southern Division on January 6, 2023. The removed case was assigned to former Superior Court of California, County of Orange judge, Honorable Fred W. Slaughter.

65.     Curiously, Honorable Slaughter entered an order that Justin couldn't remove CX105 Case (which was never before him), and that C11 Case was remanded for lack of removal jurisdiction January 12, 2023. Since January 12, 2023, despite its remand, Defendant refuses to place C11 Case on the docket.

**CHARGING ALLEGATIONS AGAINST DEFENDANT FOR ADA RIGHTS VIOLATIONS**

66. Justin's life and career have been destroyed in all material respects by the foregoing scheme. First, Catanzarite and State Bar destroyed CTI then CW either directly or indirectly as more specifically set forth in two other RICO/antitrust cases, with Defendant's staff supporting in conspiracy.

67. Justin went from having a high net worth, comfortable nest egg in an IRA, and ascending career as a CEO in technology and media to losing all his income, no assets, and a debilitating disability that affects several major life activities. Defendant staff was directly involved in all this conduct.

68. Justin suffers from severe attention deficit hyperactivity disorder (ADHD) which was well-managed by the same medication and dose for approximately ten years (Vyvanse, 60 mg) before he was targeted by the schemes involving Defendant and its staff.

69. As a direct and proximate cause of the conspiracy detailed above to violate his federal rights through the filing and maintenance of fraudulent claims through Defendant followed by deliberate obstruction of Justin's due process and civil liberty, Justin started taking medication (escitalopram) for new-onset severe depression and anxiety. His lack of rights in California led him to consider suicide.

70. December 1, 2022, Justin experienced a seizure. He was found disoriented on the ground in the bathroom, straight as a board, having chewed the side of his mouth open from convulsions. The next day, he was diagnosed with a new on-set seizure disorder. He never had such a symptom before.

71. Justin was ordered to stop taking Vyvanse and escitalopram, two medications upon which he relied to cope with his chronic ADHD and the severe emotional distress caused by State Bar racketeering, antitrust violations, civil rights violations, and conspiracy with Defendant detailed herein.

72. March 28, 2023, Justin delivered ADA accommodation requests for CX105 Case and C11 Case. On March 29, 2023, Becky Torres, ADA Coordinator for Defendant declared "we no longer have any jurisdiction over" C11 Case, which was remanded on January 12, 2023, and was knowingly false.

73. March 29, 2023, Justin responded that C11 Case and CX105 Case had both been "removed, then remanded for lack of removal jurisdiction." Indeed, CX105 Case was immediately placed back on the docket. C11 Case's remanded status was covered up in conspiracy to conceal State's refusal to appear, restrict State Bar dismissal and Plaintiff's right of appeal, to obstruct it generally in retaliation for naming Defendant in 23-cv-01616AG S-DDL, and because Justin is disabled and helpless to stop Defendant.

74.   April 4, 2023, Becky Torres, ADA Coordinator said she was "awaiting a reply from the supervisor. Superior Court has not been informed of this." She requested proof of remand.

75.   May 2, 2023, Justin wrote to Becky Torres, ADA Coordinator, copying his ADA advocate:

"Ms. Torres & Angelina,

I just want to state a few things for the record regarding Orange County Superior Court as it relates to my due process rights under the Fourteenth Amendment and the irreparable harm that OCSC [Defendant] has caused me and is causing me. Agent Alexander Murray of the FBI is copied with the U.S. DOJ's civil rights division to add evidence to my existing complaint #204141-CBZ.

1) OCSC clerks have repeatedly refused to enter defaults against the State of California – who was physically served in 30-2021-01237499 and 30-2020-01145998 but refuses to appear. I requested only entries of default for failing to answer, and yet the clerks said they couldn't enter a default in both cases. See attached for examples.

2) Attached is proof of my attempt to remove 30-2021-01237499, evidence of ex parte communications between The State Bar of California and Federal Judge Slaughter (former OCSC judge), and now a remanded file that somehow OCSC purports to lack jurisdiction over. Note the docket reflects "Case No. 30-2020-01145998, the court concludes that removal is improper and REMANDS the action." And yet, the transmittal reflects "TRANSMITTAL of documents to Orange County Superior CourtCase number: 30-[]2021-01237499" on January 12, 2023 Only 30-2021-01237499 was [n]ever before Judge Slaughter and the case was remanded to OCSC. This case is in purgatory, which appears to relate to and be retaliatory for Judge John C. Gastelum's federal defendant status in the U.S. Southern District of California 3:22-CV-01616-AG S-DDL. While it is in purgatory (you claim to lack jurisdiction, and the file is not in the U.S. Court), my record is being manipulated by OCSC at the alleged direction of The State Bar of California's Suzanne Grandt or State AG/State Bar's Charles Tsai.

3) Without explanation, OCSC removed from 30-2021-01237499 ROAs #101, #103, #107, #111 one day after I noticed those files in U.S. Southern District Court – citing that the case had been removed. Altering the record of my case by removing summary judgment papers and evidence has nothing to do with OCSC's lack of jurisdiction – and this purported lack of jurisdiction was erroneous when the case was remanded on January 12, 2023 as above. This is not my fault or responsibility. I demand the record be fixed and that Gastelum be recused. The foregoing files were accepted in July 2022 and were clearly removed by OCSC to defraud me and erase their existence.

4) The hearing I face on Friday in 30-2020-01145998 is a motion to compel production of evidence filed by a law firm (Catanzarite Law Corporation) that sued a company Mobile Farming Systems, Inc. derivatively together with its principals Amy Cooper and Richard OConnor – then took over Mobile Farming Systems, Inc. after serving 500 discovery requests on the company. The firm has been disqualified four times, but OCSC is still letting them represent the parties that they sued or are suing to

harass me. The Court of Appeal describes it as follows (See California Rules of Professional Conduct 17 (d)(3): "Thus, to briefly recap, at this point Catanzarite's concurrent and successive representation of adverse parties included the following: (1) Catanzarite was representing the Roots' elder abuse lawsuit against CTI and some of its Founders (the Probst Faction) as well as a derivative action against MFS; (2) Catanzarite had made a deal with a handful of CTI Founders to dismiss them from the Pinkerton Action [O'Connor and Cooper, who are being extorted to produce evidence]; (3) it became MFS's counsel of record; (4) Catanzarite filed a derivative shareholder lawsuit for MFS, claiming 100 percent control and ownership of CTI, despite having lawsuits filed by other people claiming to be MFS shareholders; and (5) after filing two *derivative* shareholder lawsuits, Catanzarite filed a third derivative action (the Mesa Action) claiming to represent a different set of outsider shareholders, i.e., a class of derivative shareholders willing to join in the MFS Action but also independently seeking damages from CTI, its current shareholders, and board of directors." *Beck v. Catanzarite Law Corp.*, No. G059766 , 17 (Cal. Ct. App. Jul. 13, 2022) This conduct is outrageous. I note that a clerk in OCSC was previously convicted for RICO in violation of 18 U.S.C. Section 1962(d), and it appears Mr. Catanzarite is directing the Court to permit his firm's conduct (there is no other explanation).

5) OCSC was a direct cause and substantial factor of my disability, and now is exacerbating my PTSD by overtly refusing my accommodations without explanation. I am now scheduled for a hearing on Friday before Judge Sherman, facing a motion to compel from Catanzarite Law Corporation to produce evidence in its possession as it violates virtually every ethical tenet in the book, as OCSC refuses to enter defaults against the State of California, while OCSC is manipulating my register of actions.

I can barely sleep, suffer from recurring headaches, and OCSC's ongoing conduct poses a threat of further irreparable harm to me. It appears Orange County Superior Court as an institution is retaliating against me based on my disability. It also appears to be retaliatory in that I've named it a defendant together with Judge John C. Gastelum in the U.S. Southern District of California (3:22-CV-01616AG-SDDL) which is also a violation of my First Amendment rights to petition the government for redress of grievances.

Respectfully,

Justin S. Beck"

76    The ADA Coordinator, Ms. Torres, and "supervisor," refused or failed to respond to proof that C11 Case had been remanded on January 12, 2023 Defendant refuses to accept filings in C11 Case whatsoever, and even removed filings on February 15, 2023, previously accepted from July 2022 to conceal their existence. Defendant continues to deny Justin access to its services in C11 Case and failed to accommodate his needs with deliberate indifference generally. This action follows as a last resort.

---

## COUNT I – DENIAL OF ACCESS – 42 U.S.C. § 12131, et seq.

77.  The allegations of paragraphs 1 through 75 are incorporated herein by reference.

78.  Plaintiff brings this Count I for denial of access and discrimination against Defendant under the Americans with Disabilities Act, Title II, 42 U.S.C. § 12131, et seq. ("ADA").

79.  Plaintiff is a qualified individual under ADA in that he has a mental impairment affecting his neurological system (seizure disorder), and mental and emotional illnesses (severe ADHD, severe depression, and post-traumatic stress disorder).

80.  Plaintiff's disability substantially limits one or more major life activities (namely, at various times, sleeping, speaking, reading, concentrating, thinking, working, and/or social withdrawal), with a record of such an impairment, and being regarded as having such an impairment.

81.  42 U.S.C. § 12132 holds that Plaintiff shall not be excluded from participation in or be denied the benefits of the services, programs, or activities of Defendant, or be subjected to discrimination by Defendant. In this case, that benefit is the fundamental right of access to State courts and due process.

82.  28 CF.R. § 3515 0(a) holds that Defendant "shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."

83.  As set forth above, Defendant has denied the disabled Plaintiff access to its services entirely in C11 Case. Even after Defendant had actual notice of Plaintiff's disability, Defendant still denied Plaintiff access to its services entirely in C11 Case.

84.  Defendant's services in department C11 are, when viewed in their entirety, unusable by the disabled Plaintiff.

85.  Plaintiff has further been subject to overt discrimination, where Defendant's staff knows of Plaintiff's disability, and refuses to help him under color of Defendant's prejudicial procedures.

86.  As a direct and proximate result of Defendant's denial of access and discrimination, Plaintiff has suffered severe emotional distress, daily suffering, humiliation, loss of companionship, loss of enjoyment of life, loss of trust in government, physical pain and discomfort, decrease in quality of life, mental anguish and trauma, and permanent disability. Defendant is willfully denying Plaintiff access to its services with deliberate indifference and allegedly, actual malice to harass and vex him. Plaintiff was

1    deliberately obstructed from obtaining damages against State of California for not less than

2    $138,889,249, which refused to appear in C11 Case after 6 months, where Defendant refused to enter

3    defaults. C11 Case is effectively terminated and irreparably obstructed because Plaintiff cannot even

4    file into it, nor can he appeal the Court's October 11, 2022, order due to Defendant's denial of access.

5    87.    Defendant's denial of access and discrimination constitutes a violation of Plaintiff's fundamental

6    right to due process of law protected by § 1 of the Fourteenth Amendment, U.S. Constitution. Plaintiff,

7    therefore, seeks his damages pursuant to *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006).

8    As an alternative, Plaintiff brings this Count I for damages in favor of Plaintiff under Cal. Gov. Cod. §

9    8156 where ADA constitutes mandatory duty with implementation instructions violated, or from Cal.

10    Gov. Cod. § 815.2 for the conduct of Defendant's staff (ADA Coordinator, supervisor, and C11 staff).

11    88.    Defendant's denial of access and discrimination is also good cause for prophylactic relief, with

12    *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978 (2004) "[h]olding that in providing prophylactic relief

13    in the context of a "fundamental right of access to [state] courts," Title II of the ADA "constitutes a valid

14    exercise of Congress's § 5 authority to enforce the guarantees of the Fourteenth Amendment" and

15    abrogates the states' Eleventh Amendment sovereign immunity."

16    89.    42 U.S.C. § 12202 holds that a "State shall not be immune under the eleventh amendment to the

17    Constitution of the United States from an action in Federal or State court of competent jurisdiction for

18    a violation of this chapter. In any action against a State for a violation of the requirements of this chapter,

19    remedies (including remedies both at law and in equity) are available for such a violation to the same

20    extent as such remedies are available for such a violation in an action against any public or private entity

21    other than a State."

22    90.    WHEREFORE, Plaintiff asks this Court enter judgment against Defendant as follows:

23    $138,889,249 in actual damages plus additional compensatory damages according to proof for past and

24    future severe emotional distress, daily suffering, humiliation, loss of companionship, loss of enjoyment

25    of life, loss of trust in government, physical pain and discomfort, decrease in quality of life, mental

26    anguish and trauma, and permanent disability as determined by a jury. Plaintiff requests such other

27    prophylactic relief as the Court deems just in conformance with *Tennessee v. Lane*, 541 U.S. 509, 124

28    S. Ct. 1978 (2004).

---

**COUNT II – FAILURE TO ACCOMMODATE – 42 U.S.C. § 12131, et seq.**

91. The allegations of paragraphs 1 through 90 are incorporated herein by reference.

92. Plaintiff brings this Count II for failure to accommodate against Defendant under the Americans with Disabilities Act, Title II, 42 U.S.C. § 12131, et seq. ("ADA").

93. As set forth above, Plaintiff is a qualified individual.

94. Defendant received adequate notice of Plaintiff's disability and desire for a reasonable accommodation. On March 28, 2023, Plaintiff delivered his first request for accommodations. In C11 Case, Plaintiff requested "1) Court watchers, emotional support in any hearing/Zoom. 2) Judge to be aware of harassing tactics used to trigger me. 3) Judge and clerks to be aware of State of California's refusal to appear, default." Attached to his request was proof of a new-onset seizure disorder, ADHD, and severe depression diagnoses through medical records.

95. In C11 Case, Plaintiff's request for accommodation was denied on the knowingly false basis that Defendant lacked jurisdiction despite the case being remanded on January 12, 2023. This purported lack of jurisdiction did not stop Defendant's staff from manipulating Plaintiff's record on February 15, 2023, to remove filings accepted in July 2022 where they lacked jurisdiction.

96. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff has suffered severe emotional distress, daily suffering, humiliation, loss of companionship, loss of enjoyment of life, loss of trust in government, physical pain and discomfort, decrease in quality of life, mental anguish and trauma, and permanent disability. Defendant is willfully refusing to accommodate Plaintiff with deliberate indifference and allegedly, actual malice to harass and vex him. Plaintiff was deliberately obstructed from obtaining damages against State of California for not less than $138,889,249, which refused to appear in C11 Case after 6 months, where Defendant refused to enter defaults. C11 Case is effectively terminated and irreparably obstructed because Plaintiff cannot even file into it, nor can he appeal the Court's October 11, 2022, order due to Defendant's denial of access.

97. Defendant's failure to accommodate constitutes a violation of Plaintiff's fundamental right to due process of law protected by § 1 of the Fourteenth Amendment, U.S. Constitution. Plaintiff, therefore, seeks his damages pursuant to *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006). As an alternative, Plaintiff brings this Count II for damages in favor of Plaintiff under Cal. Gov. Cod. § 8156

---

1    where ADA constitutes mandatory duty with implementation instructions violated, or from Cal. Gov.

2    Cod. § 815.2 for the conduct of Defendant's staff (ADA coordinator, supervisor, and C11 staff).

3    98.    42 U.SC. § 12202 holds that a "State shall not be immune under the eleventh amendment to the

4    Constitution of the United States from an action in Federal or State court of competent jurisdiction for

5    a violation of this chapter. In any action against a State for a violation of the requirements of this chapter,

6    remedies (including remedies both at law and in equity) are available for such a violation to the same

7    extent as such remedies are available for such a violation in an action against any public or private entity

8    other than a State."

9    99.    Defendant's failure to accommodate is also good cause for prophylactic relief, with *Tennessee*

10   *v. Lane*, 541 U.S. 509, 124 S. Ct. 1978 (2004) "[h]olding that in providing prophylactic relief in the

11   context of a "fundamental right of access to [state] courts," Title II of the ADA "constitutes a valid

12   exercise of Congress's § 5 authority to enforce the guarantees of the Fourteenth Amendment" and

13   abrogates the states' Eleventh Amendment sovereign immunity."

14   100.    WHEREFORE, Plaintiff asks this Court enter judgment against Defendant as follows:

15   $138,889,249 in actual damages plus additional compensatory damages for past and future severe

16   emotional distress, daily suffering, humiliation, loss of companionship, loss of enjoyment of life, loss

17   of trust in government, physical pain and discomfort, decrease in quality of life, mental anguish and

18   trauma, and permanent disability according to proof as determined by a jury.

19   **COUNT III – UNRUH CIVIL RIGHTS ACT – CAL. CIV. CODE § 51(f)**

20   101.    The allegations of paragraphs 1 through 100 are incorporated herein by reference.

21   102.    Plaintiff brings this Count III for ADA violations under the Unruh Civil Rights Act against

22   Defendant, where Cal. Civ. Code § 51 (f) holds a "violation of the right of any individual under the

23   federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation

24   of this section."

25   103.    Where this Court may generally abstain from supplemental jurisdiction, extraordinary

26   circumstances of this case require its invocation as Plaintiff's harm is caused by a Court Defendant

27   which is maliciously violating ADA after Plaintiff's clearly established rights to petition and due

28   process. Plaintiff cannot achieve fair adjudication of Unruh Civil Rights Act within Defendant walls.

---

104.    As set forth above, Plaintiff is a qualified individual who was denied access, discriminated against, and denied reasonable accommodations in C11 Case in violation of Unruh Civil Rights Act.

105.    As a direct and proximate result of Defendant's Unruh Civil Rights Act violations, Plaintiff has suffered severe emotional distress, daily suffering, humiliation, loss of companionship, loss of enjoyment of life, loss of trust in government, physical pain and discomfort, decrease in quality of life, mental anguish and trauma, and permanent disability. Defendant is willfully denying Plaintiff access to its services with deliberate indifference and allegedly, actual malice to harass and vex him. Plaintiff was deliberately prevented from obtaining damages against State of California for not less than $138,889,249, which refused to appear in C11 Case after 6 months, where Defendant refused to enter defaults. C11 Case is effectively terminated and irreparably obstructed because Plaintiff cannot even file into it, nor can he appeal the Court's October 11, 2022, order due to Defendant's denial of access.

106    Defendant's Unruh violations under the ADA constitute a violation of Plaintiff's fundamental right to due process of law protected by § 1 of the Fourteenth Amendment, U.S. Constitution. Plaintiff, therefore, seeks his damages pursuant to *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006). As an alternative, Plaintiff brings this Count III for damages in favor of Plaintiff under Cal. Gov. Cod. § 8156 where ADA constitutes mandatory duty with implementation instructions violated, or from Cal. Gov. Cod. § 815.2 for the conduct of Defendant's staff (ADA coordinator, supervisor, and C11 staff).

107.    Where Cal. Civ. Code 51 (f) incorporates the ADA, 42 U.SC. § 12202 holds that a "State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State."

108.    WHEREFORE, Plaintiff asks this Court enter judgment against Defendant as follows: $138,889,249 in actual damages as an alternative to Count I or Count II, treble damages of $416,667,747 as an additional penalty for malice, oppression, and fraud of Defendant's staff (CACI No. 3067), and such other prophylactic relief as the Court deems just in conformance with *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978 (2004).

---

## COUNT IV – FAILED POLICY – 42 U.S.C. § 1983

109.    The allegations of paragraphs 1 through 108 are incorporated herein by reference.

110.    Plaintiff brings this Count IV for failed policy and *Monell* liability under 42 U.SC. § 1983 against Defendant, which allegedly received federal funds directly or indirectly.

111.    The policy of Defendant evidenced by the acts or failures to act of AD A coordinator Becky Torres, her supervisor, and C11 staff deprived Plaintiff of his due process rights under § 1 to the Fourteenth Amendment to United States Constitution by violating Plaintiff's rights under the AD A

112.    Becky Torres, her supervisor, and C11 staff each acted under color of State law.

113.    The policies of Defendant were not adequate to prevent violations of Plaintiff's due process rights to handle the usual and recurring situations with which they must deal under the AD A

114.    The Defendant was deliberately indifferent to the substantial risk that its AD A policies were inadequate to prevent violations of law by its employees.

115.    The failure of Defendant to prevent violations of the AD A by its employees caused the deprivation of Plaintiff's rights by Defendant's AD A coordinator, supervisor, and C11 staff; that is, the Defendant's failure to prevent violations of law by its employees played a substantial part in bringing about or actually causing the injury or damages to the Plaintiff under the AD A

116     Violations under the AD A constitute a violation of Plaintiff's fundamental right to due process of law protected by § 1 of the Fourteenth Amendment, U.S. Constitution. Plaintiff, therefore, seeks his damages pursuant to *United States v. Georgia*, 546 U.S. 151 , 126 S. Ct. 877 (2006)

117.    42 U.SC. § 12202 holds that a "State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State."

118.    As a direct and proximate result of Defendant's failed policy Plaintiff has suffered severe emotional distress, daily suffering, humiliation, loss of companionship, loss of enjoyment of life, loss of trust in government, physical pain and discomfort, decrease in quality of life, mental anguish and

trauma, and permanent disability. Defendant is willfully denying Plaintiff access to its services with deliberate indifference and allegedly, actual malice to harass and vex him. Plaintiff was deliberately prevented from obtaining damages against State of California for not less than $138,889,249, which refused to appear in C11 Case after 6 months, where Defendant refused to enter defaults. C11 Case is effectively terminated and irreparably obstructed because Plaintiff cannot even file into it, nor can he appeal the Court's October 11, 2022, order due to Defendant's denial of access.

119.    WHEREFORE, Plaintiff asks this Court enter judgment against Defendant as follows: $138,889,249 in actual damages as an alternative to Count I, Count II, or Count III plus additional compensatory damages for past and future severe emotional distress, daily suffering, humiliation, loss of companionship, loss of enjoyment of life, loss of trust in government, physical pain and discomfort, decrease in quality of life, mental anguish and trauma, and permanent disability according to proof as determined by a jury.

### COUNT V – CONSPIRACY AGAINST RIGHTS – 18 U.S.C. § 241

120.    The allegations of paragraphs 1 through 119 are incorporated herein by reference.

121.    Plaintiff brings this Count V for conspiracy against rights by Defendant and Defendant's staff: Honorable Gastelum, C11 clerks, Becky Torres, and the ADA supervisor conspiring with State Bar.

122.    Plaintiff has permission to sue Defendant under Government Claims Act, and this case was filed within 6 months of denial of his claim against Defendant, which allegedly received federal funds.

123.    For Defendant, "Section 815 [of Government Claims Act] states in pertinent part: " *Except as otherwise provided by statute:* [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity. . . ." (Italics added) *Lopez* further instructs, "in California, *all government tort liability must be based on statute* (*Duarte* v. *City of San Jose* (1980) 100 CalA pp3 d 648, 653 [161 Cal.Rptr. 140]) However, the statute providing for liability need not be part of the Tort Claims Act itself. (Gov. Code, § 8118; *Williams* v. *Horvath* (1976) 16 Cal3 d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125]; Van Alstyne, Cal. Government Tort Liability Practice (ContE dB ar 1980) § 28, p. 39) Nor must the statute provide on its face that it is applicable to public entities. `Rather, a liability is deemed "provided by statute" if a statute defines the tort in general terms.' (*Levine* v. *City of Los Angeles* (1977) 68 CalA pp3 d 481, 487 [137 Cal.Rptr. 512]; see also *Nestle* v. *City of Santa*

*Monica* (1972) 6 Cal3d 920, 93 [101 Cal.Rptr. 568, 496 P.2d 480]; and Van Alstyne, Cal. Government Tort Liability Practice, *supra,* at p. 38)' (*Lopez* v. *Southern Cal. Rapid Transit Dist., supra,* 40 Cal3d at p. 785, fn. 2, italics added)" *Rodriguez* v. *Inglewood Unified School Dist.*, 186 CalA pp3 d 707, 716 (Cal. Ct. App. 1986)

124.    For Defendant's staff, "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov. Code § 815. 2. Defendant is allegedly liable for its staff for conspiracy here.

125.    18 U.SC. § 241 makes it a crime for two or more persons to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same. (US DOJ applies this and 18 U.SC § 242 to judges, too).

126    There exists a clear and convincing criminal conspiracy directed by The State Bar of California, led by its Office of General Counsel including Suzanne Grandt, Ellin Davtyan, Robert Retana, and Charles Tsai – to injure, oppress, threaten, or intimidate Plaintiff for suing The State Bar of California and State of California, and to deny him due process of law at every level of California courts.

127.    Someone at State Bar directed Honorable Gastelum through *ex parte* communications to obstruct Plaintiff's good faith Government Claims Act litigation in C11 Case, and it was obstructed through agreement by Defendant's staff in conspiracy with intent to deprive Plaintiff of federal rights.

128.    State Bar recommended Associate Justices Maurice Sanchez, Joanne Motoike, and Thomas Delaney to Governor Newsom with intent to direct them unlawfully to impede or obstruct Plaintiff's good faith C11 Case against State Bar and State in Defendant's 4th District, Division 3 Court of Appeal.

129.    State Bar willfully obstructed a petition to California Supreme Court, then directed Jorge Navarette or former Chief Justice Cantil Sakauye to file a fraudulent antitrust petition on Plaintiff's behalf, which posed a threat to State Bar by exposing conduct targeting Plaintiff by Defendant staff.

130.    Defendant and/or Defendant's staff – including Honorable Gastelum, C11 clerks, Becky Torres, and the AD A supervisor – have knowingly conspired with State Bar to injure, oppress, threaten, or intimidate Plaintiff in the free exercise of his right to petition the government for redress of grievances.

131.     Defendant and/or Defendant's staff – including Honorable Gastelum, C11 clerks, Becky Torres, and the ADA supervisor – have conspired with State Bar to injure, oppress, threaten, or intimidate Plaintiff of his clearly established enjoyment of right or privilege to due process of law protected by the Fourteenth Amendment, U.S.

132.     Defendant and/or Defendant's staff – including Honorable Gastelum, C11 clerks – have willfully manipulated Plaintiff's record at a time they purported to lack jurisdiction to remove evidence and filings in conspiracy with State Bar to further deprive Plaintiff due process and right to petition for redress.

133.     Defendant and/or Defendant's staff – including Becky Torres, and the ADA supervisor – have conspired with State Bar to injure, oppress, threaten, or intimidate Plaintiff of his clearly established enjoyment of right or privilege protected by the ADA.

134.     As a direct and proximate result of Defendant's conspiracy, Plaintiff has suffered severe emotional distress, daily suffering, humiliation, loss of companionship, loss of enjoyment of life, loss of trust in government, physical pain and discomfort, decrease in quality of life, mental anguish and trauma, and permanent disability. Defendant/its staff willfully conspired with State Bar with actual malice to harass and vex him and deny him due process. Plaintiff was deliberately prevented from obtaining damages against State of California for not less than $138,889,249, which refused to appear in C11 Case after 6 months, where Defendant refused to enter defaults. C11 Case is effectively terminated and irreparably obstructed because Plaintiff cannot even file into it due to Defendant's conspiracy, nor can he appeal the Court's October 11, 2022, order due to Defendant's conspiracy.

135.     WHEREFORE, Plaintiff asks this Court enter judgment against Defendant as follows: $138,889,249 in actual damages as an alternative to Count I, Count II, or Count III, or Count IV plus restitution for criminal conduct according to proof, plus additional compensatory damages for past and future severe emotional distress, daily suffering, humiliation, loss of companionship, loss of enjoyment of life, loss of trust in government, physical pain and discomfort, decrease in quality of life, mental anguish and trauma, and permanent disability according to proof as determined by a jury, and such other prophylactic relief as the Court deems just in conformance with *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978 (2004) or reverse incorporation under *Bolling v. Sharpe*, 347 U.S. 497, 74 S. Ct. 693 (1954) where U.S. has a duty under the Fifth Amendment, U.S. to ensure Plaintiff's due process rights.

## PLAINTIFF DEMANDS TRIAL BY JURY.

136    Pursuant to F.R.Civ.P. 38 (b), Plaintiff hereby demands a trial by jury of all issues so triable that are raised herein or which hereinafter may be raised in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. Awarding Plaintiff monetary damages in an amount not less than $138,889,249, according to proof in trial;

2. Awarding Plaintiff enhanced (treble) damages pursuant to Unruh Civil Rights Act;

3. Awarding Plaintiff reasonable attorney's fees, costs, and disbursements;

4. Awarding Plaintiff pre-judgment interest and post-judgment interest;

5. Awarding Plaintiff additional compensatory damages against Defendant to be decided by a jury for past and future severe emotional distress, daily suffering, humiliation, loss of companionship, loss of enjoyment of life, loss of trust in government, physical pain and discomfort, decrease in quality of life, mental anguish and trauma, and permanent disability;

6. Prophylactic relief as the Court deems just in conformance with *Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 1978 (2004) or reverse incorporation under *Bolling v. Sharpe*, 347 U.S. 497, 74 S. Ct. 693 (1954);

7. Granting such other relief as the case may require or as may be deemed proper and equitable.

Dated this 26th day of September, 2023    Respectfully Submitted,

_____

Justin S. Beck, Plaintiff, In Pro Per

## CERTIFICATE OF SERVICE

I, Brian Bargabus, hereby declare that I am over 18 years of age and am not a party to this action, and that my address is 3501 Roselle St., Oceanside, CA 92056

On September 26, 2023, I scheduled for service one copy of the following document:

**FIRST AMENDED COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF**

Participants in the case who are registered CM/ECF users will be served when these papers are filed with the Court.

*See the CM/ECF service list.*

Electronic service is scheduled for delivery September 27, 2023, to the following email addresses for pending Federal Tort Claims Act, Civil Rights, and Antitrust Complaints:

| | | |
|---|---|---|
| Corey Amundson | corey.amundson@usdoj.ca.gov | PIN Section |
| Todd Gee | todd.gee@usdoj.ca.gov | PIN Section |
| Robert Heberle | robert.heberle@usdoj.gov | PIN Section |
| Sean Mulryne | sean.mulryne@usdoj.gov | PIN Section |
| U.S. DOJ, FTCA | civil.feedback@us.doj.gov | ATTN: Hope Swain |
| FTC | electronicfilings@ftc.gov | **ATTN: Antitrust Division** |
| U.S. DOJ, Civil Rights | civil.rights@usdoj.gov | RE: #204141-CBZ |
| Antitrust Complaints | antitrust.complaints@usdoj.gov | **ATTN: Antitrust Division** |

I declare the foregoing to be true and correct under penalty of perjury under the laws of the State of California. I'm signing this from Oceanside, California on September 26, 2023

Brian Bargabus
Declarant

---